## D. W. C. PERRY v. JOHN CONROY.

1. MECHANIC'S LIEN, *How Enforced.* One who would create and enforce a mechanic's lien upon a building, must proceed according to the statute, and if, after taking the proper steps for filing his lien, he commences action thereon before or after the times authorized by statute, no decree foreclosing the lien will be awarded.

2. FORECLOSURE, *When Maintainable.* An action foreclosing a mechanic's lien will not lie until sixty days after the completion of the building or improvement, and that notwithstanding earlier payment was stipulated for, and though action might be maintained for the money promised, immediately upon failure of payment at the time agreed upon.

3. BUILDING, *Not to be Considered Completed.* Where, pending the erection of a building, the owner ceases work and loses title, and the party acquiring the title proceeds with the work as regularly as the prior owner, and completes the building commenced by such owner, a contractor under such owner cannot elect to consider the building completed at the time of the transfer of title, and file and foreclose his lien accordingly.

*Error from Labette District Court.*

ACTION by *Conroy* against *Perry*, to foreclose a mechanic's lien. Trial at the May Term, 1878, of the district court, and judgment for plaintiff. The defendant brings the case to this court. The facts appear in the opinion.

*T. C. Cory*, for plaintiff in error.

*A. H. Ayres*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: On the first day of September, 1875, de-
fendant in error was the owner of lot 27, in block 25, in the
city of Parsons, and one Michael Galvin was the owner of
the adjoining lot, 26, in the same block, and each of said
parties, contemplating erecting a brick store-building on his
said lot, entered into an agreement by which the west wall
of Conroy's building should be placed on the line between
said lots 27 and 26, to be built by Conroy in the first in-
stance, and one-half of the cost thereof to be paid by Galvin
when he completed his building on his lot. Conroy com-
pleted the said wall on the 26th of September, 1875, and
had his entire building completed on the 1st day of Novem-
ber, 1875. On the 10th of November, 1875, Galvin com-
menced the erection of the building on his lot, 26, and
continued in and about the erection of the building at irreg-
ular intervals, until July 23, 1876, when he ceased to do
any work. At that time the outer walls were erected, the
doors and window sash were in, the lower floor was laid, but
no finishing was done on the sides or top of the room, and
no roofing save with sheathing-boards.

At the May term, 1876, of the district court, held in La-
bette county, Robert Whittaker, Henry Staub, and Patrick
& Stafford recovered judgments against said Galvin for labor
performed and material furnished in the erection of the
building on his lot, 26, which judgments were declared a
lien on said lot; and at the same time and in the same court,
A. A. Smith recovered a judgment against Galvin for $720,
and a decree foreclosing a mortgage on said lot 26, subject
however to the liens of Whittaker, Staub, and Patrick &
Stafford.

On the 12th of August, 1876, plaintiff in error, without
any actual notice of the claim of the defendant in error, pur-
chased the said judgment of A. A. Smith, and on that day
had the same assigned to him on the judgment record.

On the 16th of August, 1876, the defendant in error filed

his statement for a mechanic's lien in the office of the clerk of the district court of Labette county.

On the 19th of August, 1876, said lot 26 was sold by the sheriff under the judgments of Staub and others (rendered at the May term of the district court), and bid off by plaintiff in error, who did not then have actual knowledge of the claim of defendant in error.

On the 1st of January, 1877, plaintiff in error completed the building on said lot 26, which was after the commencement of this suit in the district court by defendant in error.

The case was tried in the district court at the May term, 1878; judgment was given for plaintiff (defendant in error), foreclosing his mechanic's lien on lot 26. The defendant Perry (plaintiff in error) excepts, and brings the case to this court for review.

The questions of the existence of a mechanic's lien, and the methods of enforcing one, depend entirely upon the statute. It may be conceded that judgment was properly rendered against Galvin upon the breach of his personal contract to pay for one-half of the wall, and yet such concession in no manner determines the question of the existence of a lien upon the lot on which the half-wall was built. Unless the statute concerning liens was complied with, no lien exists; and if a lien exists, no action will lie, unless brought in the time and manner prescribed by statute.

Now upon the facts as they appear in the findings and by the record, one of two things is clear: either the half-wall was an independent improvement upon lot 26, or it was part and parcel of the building erected on said lot. It is not necessary to determine this question, and perhaps other facts should be found before it could be satisfactorily determined. *Prima facie*, it was part of the building, yet the intention of Galvin at the time of making this arrangement with Conroy in reference to erecting a building may have been such as to have compelled us to consider this a separate improvement. (*Jean v. Wilson*, 38 Md. 288.) If the former, then as the improvement was completed by September 26, 1875, and no

claim of lien filed until August 16, 1876, no lien was created, for the statute requires that a statement of lien must be filed within four months after the completion of the improvement. (Dass. Comp. Laws, p. 689, § 3.) On the other hand, if the half-wall was simply part and parcel of the building on lot 26, then, as that building was not completed until after the commencement of this action, the action was prematurely brought, for the statute provides that no owner shall be liable to an action by the contractor until the expiration of sixty days from the completion of the building. (Dass. Comp. Laws, p. 689, § 2.) Counsel would avoid the effect of this in two ways. He claims that by agreement between the parties, payment was to be due when Galvin "put up his building," and that this should be construed as meaning, not when he finished, but when he commenced his building. Even if this were the case, we do not see what difference it would make. The lien law, while intended primarily for the benefit of contractor and sub-contractor, also aims to protect the lot-owner. To secure to the two former their rights, it grants them a certain time in which to file their liens, and as protection to the latter, says that no action can be maintained against him during such time. Suppose that parties contract for earlier payment, and concede that the statute in no manner interferes with that as a personal contract, and that it may be enforced by personal action at the time the money by its terms becomes due thereon, though we do not decide that such is the law, yet when the plaintiff asks not merely a judgment for his money, but the enforcement of a lien not created by contract, but given only by statute, he must bring himself within the terms of the statute, or he will fail of his lien. He may sue too early, or too late. An action on his contract, if a written one, will lie at any time within five years; but to enforce a lien, it must be within one year from the completion of the building. So if he sues before the expiration of sixty days from the completion of the building, his action is premature.

The other proposition of counsel is, that inasmuch as Gal-

vin ceased work on the 23d day of July, 1876, and lost the title on the 19th of August, 1876, at one or other of those dates the building must be considered as completed within the purview of the lien law, so far at least as to all prior and completed contracts. There is plausibility in this claim, and the argument of counsel is put with force. We quote what he says:

"Galvin commenced to build, and appropriated our wall November 10th, 1875, and continued in the erection and inclosure of the store eight months, to July 23d, and then finally abandoned it. It was then being advertised for sale on the 19th of August. It was on that day sold, and Galvin could no further finish it; and suppose that Perry, the purchaser, would not, so that Conroy may have no day 'within four months from the absolute completion of the building' to file his lien statement: can the purposes of the act be thus thwarted, and Conroy lose the price of the half-wall? Can the owner always by refusing, or, being unable to finish according to the original design, elude or defeat the lien? Is the statute really a mere snare? It seems clear enough that when the owner finally concluded his labor in and about the building, it must be deemed finished and completed by his election within the lien act; that when he gave up the lot and building to public sale, and it was sold, that was an election to consider the building completed, and a completion within the act as to the materialman whose property has been furnished; at least, if the materialman or workman, whose labor is rendered, so elects, it is a completion of the work and building, and the purchaser may use it for what he chooses. The building is sold and bought as completed, and the materialman has no resort to the purchaser for the price of material in the building, nor can either compel the other to receive or pay for undelivered material. There is no privity between them. The building as to them is completed."

Notwithstanding, we cannot yield our assent to the proposition, as broadly at least as it is stated, or even so far as will be necessary to support the judgment in this case. It is not within the letter of the statute. That names the completion of the building, and here the building was manifestly incomplete. Grant that the parties solely interested may agree to treat the building as complete: here there was no such

·agreement. The present owner is contesting, and the former owner did not while he owned, and could not now, make ·such agreement. To imply an agreement might be a wrong upon the present owner, for he may have purchased with knowledge of this claim, but, believing that its collection could not be enforced against the property until sixty days after the completion of the building, might have made his arrangements for payment accordingly. Almost invariably when title passes, the building being unfinished, the former owner ceases and the new owner commences work. Sometimes the same contractors and employés are continued; sometimes new ones are engaged. Here, for aught that appears, the present owner continued the same employés, and proceeded as promptly and regularly in the work as the former owner, so that there was no more apparent break in the work than there had previously been; for the findings ·show that the work had been carried on at irregular intervals. If in this case the contractor may elect to consider the building finished, he may in almost any other case of transfer of title. It is a matter of election with him. If so, and there are several contractors and sub-contractors, may one ·elect to consider the building complete, and proceed to enforce his lien, and another elect not to so consider it, and wait till the building is actually finished before filing and ·enforcing his lien? May the contractor elect one way, and his sub-contractor the other? A little reflection will show how great confusion this doctrine of election would create. On the other hand, if when the title passes, and the former owner ceases work, the building is to be considered as completed without any election on the part of the contractor, ·such ruling would endanger the latter's lien. Such transfer is often attended with little publicity. A deed may be recorded, but must a contractor keep watch of the public records? No change may be made in the mode or the party ·actually making the payments; so that in fact the contractor may have no knowledge of the change, or if the contractor has, the sub-contractor may not. As to all, is the building

46 — 22 KAS.

to be considered as complete when in fact it is not?   As a
rule, contractors do not care to file liens, and do not file
them until there is some fear; lot-owners do not wish liens
filed.   But if a change of title may work such results, the
only safety would be in filing liens instantly on the delivery
of material, or the doing of work.   The law should not un-
necessarily cast such a burden on parties.   On the other
hand, the completion of the building is something apparent
to anybody's view.   Anyone having a claim can easily,.
without inquiry and without trouble, watch for himself.
And it is the date named in the statute.   If parties wish
to go outside of the statute, they can create a lien by con-
tract.   If, having contracted for no lien, they seek to create
and enforce a statutory lien, no wrong is done if they are
held to the terms of the statute.

We conclude, therefore, that the action was prematurely
brought, and the judgment will be reversed, and the case
remanded with instructions to render judgment for costs on.
the findings in favor of the defendant, plaintiff in error.

All the Justices concurring.