## THE CHICAGO LUMBER COMPANY v. THE MERRIMACK RIVER SAVINGS BANK.

1. MECHANIC'S LIEN—*Time of Filing Statement.* Parties furnishing materials for the erection of a building, in order to maintain a lien therefor, must file the statement required by the statute within four months after the completion of the building.

2. —————— *Computation of Time.* Where work on the building is abandoned by the owners, the statement must be filed within four months after the abandonment. The time when such abandonment occurs is to be determined from the actual cessation of the work, and not from the secret purposes or mental conclusions of the owners.

3. PRACTICE—*Demurrer to Evidence.* The practice of entertaining demurrers to the evidence in cases tried by the court without a jury is authorized by the spirit, if not by the letter, of the code, and it is not error for the court to entertain such a demurrer.

*Error from Mitchell District Court.*

ACTION by the *Chicago Lumber Company* against the *Merrimack River Savings Bank* to foreclose a mechanic's lien. From an adverse judgment, at the January term, 1890, plaintiff brings error. The opinion states the material facts.

*W. W. & W. F. Guthrie,* for plaintiff in error:

It is insisted that in a court trial there is no authority for judgment upon a demurrer to evidence. The right to judgment in such case is expressly limited by the code to jury trials. Clause 3 of § 275.

We are aware that this court, in *Davis v. Bullard,* 32 Kas. 234, 235, and *Caeman v. Van Harke,* 33 id. 333, 335, has considered cases in which demurrers to evidence have been interposed in court trials, but no point seems to have been made in this respect, and hence the opinion of this court cannot be considered as more than an *obiter dictum.*

On August 7, 1887, the plaintiff filed a perfected lien, and on November 4, commenced an action thereon to establish its claim against Douglass & Bixby, as owners, and a first

lien upon the 160 acres improved, as against the bank mortgage.  There can be no question that the plaintiff filed its July 8, 1884, lien before the improvements were completed, · for at the commencement of this action they were still uncompleted, or that the bank pleaded to such effect, and, such being the law, that the plaintiff was compelled to abandon such claimed lien.

The plaintiff admitted the claim of the bank in such respect and thereon dismissed its case and disclaimed any lien under its July 8, 1884, lien.  If prematurely filed, then there was no lien.  *Catlin v. Douglass,* 33 Fed. Rep. 569; *MacDonald v. Seaton,* 27 Kas. 672; *Davis v. Bullard,* 32 id. 234.  This court has also decided that, until the buildings were completed or abandoned, no foundation for lien could exist.

It is for the property owner to determine when he will refuse to prosecute his work and thereon to abandon its completion.  His decision cannot be gainsaid except upon the claim of fraudulent collusion with the party claiming affirmatively.

Plaintiff furnished the lumber under contract to the landowners in 1883, and late that year work was suspended; in 1884 filed a lien; in 1885 sued on it; in 1886 defendant pleaded that the improvements were not completed; in 1887 the United States court held the plea good, and plaintiff disclaimed under its 1884 lien and dismissed; in June the owners abandoned, in fact, the property, and in August a new lien was filed, and sued on in November.  This showing was fully made; there was no denial, and no conflict in the evidence.  When plaintiff filed its early lien the defendant said it was premature, because the mill was not completed; and when a later lien was filed it was insisted that it was stale.  And at each time the mill was in the same status.  While at first the owners were holding on, hoping that the defendant would furnish the money, under the provisions of their mortgage, at the last they had given up hope, and finally abandoned the project.

*Douthitt, Jones & Mason,* for defendant in error:

The only proposition of law which the plaintiff in error seeks to present to the court in its brief, as it seems to us, is, that the material man has a right to a lien when the building is abandoned, although not completed; that abandonment does not mean when the work is quit, but after the work is quit, litigation begun, receiver taken charge of the property, and this exists for a period of three years; that abandonment, as used in the statute, does not exist until the party has come to the mental conclusion that he cannot possibly complete the said work. In other words, abandonment should be considered by the court to have occurred only at the time when the party concluded on his part that he could not in any way go on further, regardless of when any work had been done, or when the labor ceased, or the construction of the building stopped. We say this is not the meaning of the statute. See *Perry v. Conroy,* 22 Kas. 716; *Crawford v. Blackman,* 30 id. 527; Jones, Liens, 1438.

The Merrimack River Savings Bank, being made a party, appeared at the trial, and, when the plaintiff in error completed its testimony, filed a demurrer to plaintiff's testimony, on the grounds that it did not show that the plaintiff in error was entitled to any lien whatever against the land because of the former suit of foreclosure in the United States circuit court; and the court, after having heard the arguments of counsel for plaintiff in error at length, sustained the demurrer, decided that its lien was not good, but gave it judgment upon its claim against defendants Douglass & Bixby, to whom the lumber was sold. We have no doubt that this was the correct judgment. *St. J. & D. C. Rld. Co. v. Dryden,* 17 Kas. 278; *Caeman v. Van Harke,* 33 id. 333.

The opinion of the court was delivered by

ALLEN, J.: This action was brought by the Chicago Lumber Company to foreclose a mechanic's lien, filed August 7,

1887, on a quarter section of land and an unfinished mill situated thereon. The plaintiff's claim is for materials furnished by it to Douglass & Bixby, the owners of the property. The first item was furnished, as appears from the bill attached to the statement for a lien, on November 7, 1882, and the last item on December 13, 1883. The defendant bank claims under a mortgage, dated June 29, 1883, for $8,000. There was a prior mortgage on the land in controversy for $1,000, given to one Levi Catlin. Suit was brought on this mortgage by Catlin in the Mitchell county district court, on December 17, 1885, against Douglass & Bixby, the Chicago Lumber Company, Merrimack River Savings Bank, and others. On the 2d day of April, 1886, leave was granted the Chicago Lumber Company to answer in that action, and on the same day its answer was filed. Thereafter, the case was removed into the circuit court of the United States. The Merrimack River Savings Bank answered, setting up its mortgage, and, replying to the answer of plaintiff in error, among other things, alleged: Fourth, that the lumber company's lien set up in that action (which was sworn to on the 8th of July, 1884, though the date of filing does not appear in the record) was prematurely filed; and, fifth, that its suit was not begun within one year after filing its lien. To these parts of the reply the lumber company demurred. Its demurrer was overruled by the court, and thereafter the lumber company admitted that its statement for a lien was prematurely filed, and disclaimed any lien by virtue thereof. This disclaimer was filed on the 23d of May, 1887. Thereafter, it filed a new statement, on which this suit is founded. It appears that the last work was done on the mill building late in the fall of 1884, and that it was then left in an unfinished condition, and has so remained ever since.

Various matters are discussed in the briefs by both parties, which, under the view we take of the case, it is unnecessary to mention. The statute under which the lien is claimed

provides that the statement shall be filed within
four months after the completion of the building.
It appears that this building never was in fact
completed, but it has been held by this court, and
is certainly consistent with the spirit of the law, that, where
the work is abandoned, parties entitled to a lien shall not be
thereby deprived of their rights, nor prevented
from enforcing them, but that when the work is
abandoned the building shall be deemed com-
pleted, for the purpose of protecting their rights.

*1. Mechanic's lien—time of filing statement.*

*2. Computation of time.*

In *Shaw v. Stewart*, 43 Kas. 572, it was said:

"All the authorities sustain the proposition that if the aban-
donment of the work upon the building had been caused by
Stewart, the owner of the property, plaintiffs would be en-
titled to their liens, as the abandonment of the work would
have been deemed a completion of the work for the purpose
of filing such liens. (*Catlin v. Douglass*, 33 Fed. Rep. 569;
*Trammell v. Mount*, 4 S. W. Rep. 377.)"

See, also, *Perry v. Conroy*, 22 Kas. 716; *Crawford v. Black-
man*, 30 id. 527.

The plaintiff in error strenuously contends that the aban-
donment does not take place until the owners have arrived
at the mental conclusion that they cannot proceed with the
work. If this construction of the law were to be adopted,
parties entitled to a lien would find themselves in a very
precarious predicament. It might be a matter of very great
difficulty to keep track of the mental operations of the own-
ers, who, in most instances, would be interested in defeating
rather than in maintaining liens upon their property. If one
may cease to work on a building when partially completed,
and by leaving some portion unfinished, with the purpose and
intention of proceeding with the work at some future and
indefinite period, the time when laborers, contractors and
material men may enforce their demands will be indefinitely
postponed, and they will be put in the most hazardous posi-
tion, of being defeated ultimately of their liens if they fail to

file them within the time prescribed by the statute, or of being defeated in a suit if the work be thereafter resumed.

We think the contention of the plaintiff in error, that abandonment of work on this mill is a mental act of the owners, is unsound; that it is a physical, visible condition, to be determined from an inspection of the premises. When Douglass & Bixby ceased to do anything toward the completion of their building, they abandoned the work, no matter how much they may have hoped, expected or intended to be able to resume, if subsequent events show that they never did in fact resume work. If the owner temporarily suspend work on the building, and thereafter resume, no doubt liens might be taken within the statutory period after completion of the work; and if it were a fact in this case that the owners had resumed work for the purpose of completing the building as originally planned, a different question would be presented. It is immaterial what the cause of the abandonment may have been. It is suggested that the reason in this case why the work was not further prosecuted is, that the savings bank failed to furnish Douglass & Bixby money they were to have loaned on the mortgage set up in their answer; that Douglass & Bixby wished and intended to get the balance of this money and apply it toward the completion of their mill, and therefore that they cannot be said to have abandoned their enterprise. In a certain sense, this view would seem to be fair; yet we think these facts go rather to show a cause for the actual physical abandonment of the work than to negative the fact of such abandonment. Perhaps the most common reason for the abandonment of work on improvements of all sorts is the want of means or ability to go on. Probably, in a majority of instances, the owner still desires and intends if possible to complete his project. He abandons actual operations, not of his own volition, but from the force of circumstances he cannot control.

The first statement for a lien contains the statement "that said flouring mill and appurtenances and dwelling house were not completed on or about the 13th day of December,

1883, and are not yet completed at the time of the execution of this affidavit."

It contained no statement of an abandonment of the work, and therefore on its face shows that it was prematurely filed, and the evidence in this case shows that work on the mill was done late in the fall of 1884. It is clear then that the statement was prematurely filed; but the fact that the former statement was prematurely filed does not make the later one in time. Work was actually abandoned late in 1884. If we were to say that the statement which was filed by the plaintiff on the 7th day of August, 1887, more than $2\frac{1}{2}$ years later, was in time, it seems to us that the limit prescribed by the statute would be practically construed away, and that no one could ever determine when to file his statement, or when the time for filing liens had expired. The former suit was not commenced in time, and consequently cannot aid the plaintiff in this, nor do we perceive that the premature filing of a statement for a lien can in any event relieve the claimant from afterward filing another within the time limited by the statute.

Much is said with reference to the failure of the savings bank to furnish money in accordance with its agreement with Douglass & Bixby. We are unable to perceive how this can in any manner affect the plaintiff's rights in this case, or how it can be held to relieve it from the duty of proceeding in accordance with the statute.

When this case was called for trial, a jury was waived, and the record contains this recital: "And the said cause thereon came on for trial to the court, with conclusions of fact and of law to be found and stated thereon." After the plaintiff had introduced all its evidence and rested, the defendant filed a demurrer thereto. Plaintiff objected to the consideration of the demurrer, and moved to strike it from the files, for the reason that such proceeding was not authorized in this case. This motion was overruled by the court. The demurrer was considered and sustained. Counsel strenuously insist that this practice is unauthorized where cases are tried by the court, and that § 275 of the code applies only to

jury trials. Unless it be held that § 275 applies to trials by the court so far as applicable, the code contains no provision as to the order of trial in cases submitted to the court. We perceive no good reason for holding that demurrers to the evidence may not be filed and considered in such cases, as well as in jury trials, and this practice, though perhaps never directly challenged before in this court, has been recognized and sanctioned in numerous cases. (*Davis v. Bullard*, 32 Kas. 224; *Caeman v. Van Harke*, 33 id. 333.)

3. Practice—demurrer to evidence.

Counsel further contend that, by reason of the sustaining of the demurrer to the evidence, plaintiff was deprived of having the conclusions of fact and of law stated by the court. We fail to see that it is in any manner injured thereby, for all the evidence introduced by it is to be taken as true, and considered in the aspect most favorable to it.

Judgment is affirmed.

All the Justices concurring.