27 P.(2d) 984

HOT SPRINGS PLUMBING & HEATING CO. et al. v. WALLACE.

No. 3791.

Supreme Court of New Mexico.

Oct. 26, 1933.

Rehearing Denied Jan. 3, 1934.

Edward D. Tittmann, of Hillsboro, for appellant.

J. Benson Newell, of Las Cruces, for appellees.

HUDSPETH, Justice.

The Hot Springs Plumbing & Heating Company brought suit against Frank Wallace and Fred Standau to foreclose a mechanic's lien for plumbing work done on a building erected by Standau, as lessee of Wallace, on ground belonging to Wallace, in the sum of $717.93. The Love Lumber Company filed a petition in intervention in this suit, seeking foreclosure of its lien for materials furnished to the defendant in the sum of $747.03. Wallace denied, on information and belief, the allegations of the complaint and of the petition of intervention. Defendant Standau did not appear. The case was tried to the court without a jury, and a decree entered sustaining the lien of the Hot Springs Company in the full amount of $817.92, including interest and attorney's fees, and that of the Love Lumber Company in the amount of $574.35, and ordered the property sold to satisfy these liens. From this judgment defendant Wallace appeals to this court. The intervener, Love Lumber Company, prosecutes a cross-appeal from that portion of the decree which dis-

allowed an item of $225.58 for Celotex furnished by it in the construction of the building.

It appears that on or about December 11, 1929, defendant Standau made an oral agreement with the Love Lumber Company for the purchase by him of building materials to be used in and about the construction of an annex to, and improvements on, a bathhouse building standing upon Wallace's property. By this agreement Standau was to pay for the materials furnished in installments of $100 cash at the time of the first delivery, $100 thirty days thereafter, and $50 each month thereafter until the full amount should be paid. According to the testimony of J. E. Love, there was no definite understanding as to exactly how much material the construction would require. Standau "thought when he started that $700.00 would be about what he required," but Love "didn't agree to furnish him just $700.00. He had told me about what he wanted to do, and I to furnish the material and he to pay it, except that he thought that by the first of April he could finish paying the entire amount, if not he would increase to $100.00 a month." Materials were furnished as ordered at short intervals between December 11th and approximately March 1st. Some time in February or March—the exact date is not clear, but apparently after close to $700 worth of material had been furnished—there was a temporary discontinuance in the furnishing of material. According to the witness Love: "That was when Mr. Wallace and Mr. Standau was having quite a little trouble, Mr. Standau was hav-

ing a hard time meeting his payments and told me he couldn't get the money and I saw it was going to take quite a bit more than he thought it would and I rather held him off. I discouraged him from trying to finish it up until I had this talk I mentioned with Mr. Wallace about the first of April." His testimony as to the talk mentioned was as follows:

"I went to see him (i. e., Wallace); Standau had agreed that the first of April he would make his last $50 payment and after that he thought he would be able to pay it all and he wasn't able to do that and I went to Wallace and talked, and Mr. Wallace had told me at different times that he was having trouble getting his rent, so I talked to Mr. Wallace along about this time and he said that he was still afraid that Standau was going to fall down and he said, how much does he owe you and I said approximately $350.00 and he says 'Is that so, he is getting along better than I thought. He told me he had bought seven or eight hundred dollars worth from you and put in there,' and I said 'He has but he has paid it down to $350.00.'

"Q. Was that all that was said? A. That is about the conversation, yes, Mr. Wallace talked like he was very well pleased with the way it was going. Then I went ahead after that on the strength of that conversation with Mr. Wallace and furnished Standau further material to finish up inside.

"Q. All under the same arrangement that you had with him? A. Yes sir, except at that time, when I furnished him this other

to finish it up, I stipulated that he must pay me more money and he agreed to pay me $200.00 within ten days and then pay $100.00 a month from then on, but he didn't."

The Love Lumber Company resumed the furnishing of material on April 8th, and continued to do so, apparently under the new arrangement as to payment, until May 10th, when the last item of material needed for the completion of the building had been furnished.

As to the claim of the Hot Springs Company, it appears that they entered into a verbal agreement with Standau in the early part of January, 1930, for the installation of bathtubs, showers, and a water heating system in the building then under construction. The work, commenced almost immediately, was interrupted on January 24th, and not continued until the following April 17th. The entire plumbing work was completed on May 7th. The reason for the interruption of the work between January 24th and April 17th was, according to the testimony of plaintiff's witnesses, that the installation of fixtures depended upon the progress made in the building construction and carpenter work, and that some of the plumbing work could not be done until the building had been practically completed inside and out.

Substantially the same points relied upon for reversal of the judgment in favor of the Love Lumber Company are relied upon for reversal of the judgment in favor of the Hot Springs Plumbing Company. We shall here discuss the points in the order in which they are made, first, with reference to the

claim of the Love Lumber Company, and, secondly, with reference to the claim of the Hot Springs Plumbing Company.

▪ The first point advanced by appellant is directed more particularly to the claim of the Love Lumber Company, and is that: "There is a fatal variance between the allegations of the lien claim and the proof in this, that the lien claim alleges and sets out one contract only, whereas it appears from the evidence that there were two contracts."

That portion of the statement of lien material to the contention made reads as follows: "That said lien arises by virtue of a contract made and entered by and between the lien claimant and Fred Standau, lessee and was at the time in possession of the premises, on the 11th day of December, 1929, by the terms of which the claimant agreed to furnish certain building material on said premises to be paid for as follows: One hundred dollars cash, at the time said contract was made, One hundred dollars thirty days thereafter, and fifty dollars each month thereafter until the amount was fully paid; that on the 12th day of February, 1930, said purchaser agreed to pay claimant two hundred dollars cash and one hundred dollars each month thereafter until the full amount was paid."

The first bit of evidence relied upon in support of appellant's contention is the answer filed by the Love Lumber Company, which alleged that on December 11th the company entered into a contract with Fred Standau, and that on February 12th they entered into "another contract" with him. Inasmuch as the answer containing this allegation was later in the proceedings superseded by the Love Lumber Company's petition of intervention, the allegation cannot be considered; the answer not having been formally introduced into evidence at the proper time. See Wigmore on Evidence (2d Ed.) § 1067. Cf. Albright v. Albright, 21 N. M. 606, 157 P. 662, Ann. Cas. 1918E, 542.

▪ The statement of lien clearly sets out two agreements as to the time and method of payment. The evidence accords therewith. However, it seems to be appellant's theory that the testimony shows that the original agreement of December was that the Love Lumber Company was to furnish Standau with $700 worth of material, and that after approximately that amount of material had been furnished Standau wanted additional material, and that the additional material was furnished to him under an entirely new and independent agreement. Appellee's theory is that the original agreement was that the Love Lumber Company was to furnish Standau with materials sufficient for the construction of his bathhouses. The theory of the proof here advanced by appellant was not only not urged in the trial court, but it is inconsistent with defendant's proposed finding of fact No. 3. He cannot, therefore, urge it here. Elsewhere in appellant's brief the correctness of appellee's contention as to what the original agreement was appears to be conceded. We are unable to find any merit in appellant's first contention, and it will therefore be overruled.

Appellant's second point relied upon for reversal raises a question as to whether the statements of lien of the Love Lumber Com-

pany and of the Hot Springs Plumbing Company were filed within such time as to permit the allowance of a lien, under the statute, for all of the items contained in those statements of lien that were allowed in the decree of the trial court.

Under the rule of Freidenbloom v. Pecos Valley Lumber Co., 35 N. M. 154, 290 P. 797, both the lumber company and the Hot Springs Plumbing Company were "original contractors." Each was required, in order to preserve his lien, to file his claim "within one hundred and twenty days after the completion of his contract." Section 82-206 of the 1929 Compilation.

We consider first the claim of the Love Lumber Company. Its statement of lien, a portion of which is set out earlier in this opinion, was concededly filed well within 120 days after May 10th, the date upon which the last item of material for the completion of the building and improvements was furnished to Standau, but more than 120 days after March 1st, when the company temporarily discontinued the furnishing of materials begun in December of 1929.

It is argued by appellant that the suspension of the furnishing of materials during March constituted a breach of the "contract" of December 11th, which terminated that "contract," and that as to the items furnished up to that time, the statutory time within which to file a claim of lien began to run on that date. In support of this contention we are referred to Jones on Liens, § 1440, which reads as follows: "Where a contract has been abandoned by the parties after some work has been done under it, and a new, independent contract has been made in its place, no lien for work under the former contract can be sustained after the lapse of the time within which a lien could be enforced under the former contract standing by itself."

The correctness of this as a general proposition of law is not here questioned, nor are we here concerned with the general proposition advanced by appellant that a lien claim, already barred, cannot be revived by tacking on an additional claim not incurred under the original agreement. The cases from which the above propositions are deduced are clearly distinguishable from the case at bar, and we are of the opinion that the facts of this case do not bring it within the principles contended for.

As we analyze this case, there was not a single, nor were there merely two, contracts (using that term in the technical sense of legally enforceable agreement) involved, but a series of numerous contracts. The question is entirely ignored by counsel, but it is highly doubtful that any enforceable "contract" for the furnishing of materials for the construction of the building was created by the agreement of December 11, 1929, for that agreement was indefinite both as to the quantity of material to be furnished and as to the price to be paid for such material. See Williston on Contracts, §§ 41, 45, 49; Williston on Sales (2d Ed.) §§ 167, 168. The agreement of that date, as set out in both the notice of lien and the petition of intervention, seems to have been more or less in the nature of an understanding preliminary to the furnishing of materials, and the materials would seem to

have been furnished under a series of contracts, the delivery and acceptance of each batch of materials constituting a unilateral contract, the acceptance of the materials fixing the price to be paid by the buyer, with the understanding of December 11th (and later, the understanding of later date) providing the contractual term as to time and method of payment of the price fixed. Each order was not, however, to be the subject of a separate settlement, and the materials so furnished were all in pursuance of one general object or undertaking. Each order did not, under such circumstances, give rise to a separate lien. See Maxwell Lumber Co. v. Connelly, 34 N. M. 562, 287 P. 64.

"Where work or material is done or furnished, all going to the same general purpose, as the building of a house or any of its parts, though such work be done or ordered at different times, yet if the several parts form an entire whole, or are so connected as to show that the parties had it in contemplation that the whole should form but one, and not distinct, matters of settlement, the whole account must be treated as a unit, or as being but a single contract." Phillips, Mechanics' Liens, § 229.

And the rule of the majority of American jurisdictions as to materials so furnished, as upon a running account, is that the period limited for filing a mechanic's lien begins to run, as to each item of the account, from the date when the last item was furnished. See Jones on Liens, §§ 1435, 1436; Trustees of German Lutheran Evangelical St. Matthew's Congregation v. Heise, 44 Md. 453; Big Horn

Lumber Co. v. Davis, 14 Wyo. 455, 84 P. 900, 85 P. 1048, annotation 7 Ann. Cas. 946; Union Trust Co. v. Casserly, 127 Mich. 183, 86 N. W. 545; Sandusky Grain Co. v. Borden's Condensed Milk Co., 214 Mich. 306, 183 N. W. 218, 224; Kizer Lumber Co. v. Mosely, 56 Ark. 544, 20 S. W. 409; American Tank Co. v. Continental & Commercial T. & S. Co. (C. C. A.) 3 F.(2d) 122; State Sash & Door Co. v. Norwegian, etc., Seminary, 45 Minn. 254, 47 N. W. 796; St. Paul & M. Pressed Brick Co. v. Stout et al., 45 Minn. 327, 47 N. W. 974; Siegmund v. Kellogg Mackay-Cameron Co., 38 Ind. App. 95, 77 N. E. 1096; cf. Spruhen v. Stout, 52 Wis. 517, 9 N. W. 277; Perkins v. Boyd, 16 Colo. App. 266, 65 P. 350; Berkshire v. Hall (Mo. App.) 202 S. W. 414; Burel v. East Arkansas Lumber Co., 129 Ark. 58, 195 S. W. 378, 10 A. L. R. 1017; Paine & Nixon Co. v. Dahlvick, 136 Minn. 57, 161 N. W. 257.

Section 82-206 of the 1929 Compilation speaks of the original contractor's "contract." However, the word "contract" is frequently used by courts, legislators, lawyers, and laymen alike in the broader sense of "agreement," or "undertaking," rather than in its strictly technical sense of "legally enforceable agreement." We think the Legislature intended it in the former sense here. To hold otherwise would be to render the right to a lien accorded by section 82-202 of the 1929 Compilation an illusory one in many instances.

We are of the opinion that the temporary interruption in the furnishing of materials by the Love Lumber Company to Standau

during March, pending the making of more satisfactory credit arrangements with him, constituted no abandonment of the undertaking begun in December. A mere suspension in the doing of work or the furnishing of materials by a claimant, unaccompanied by an intention to cease work or cease furnishing materials permanently, or at least indefinitely, does not start running the time within which a claim must be filed for work done or materials furnished prior to the suspension. See Eastern & Western Lumber Co. v. Williams, 129 Or. 1, 276 P. 257; Feick v. Stephens (C. C. A., 6th) 250 F. 185, 186; Bethlehem Const. Co. v. Christiana Const. Co. (Del. Super.) 144 A. 830; cf. Chicago Lumber Co. v. Merrimack Riv. Sav. Bank, 52 Kan. 410, 34 P. 1045, at page 1046. See, also, Van Wart v. Rees, 112 Me. 404, 92 A. 328, wherein it is said: "The interruption of the work for a short time and its subsequent resumption without a change of the original design and character will not constitute a new commencement, or affect the attaching of the lien when the building was originally commenced."

The new arrangement as to payments, made with Standau during the time of the suspension of the work, did not distinguish between materials which had been furnished prior to March 1 and those which might later be furnished. We find no basis in the authorities, and we see no reason in logic for holding that the making of these new arrangements constituted a material break in the continuity of the transaction or undertaking of the Love Lumber Company.

For the reasons indicated, appellant's second point relied upon for reversal of the judgment rendered in favor of the Love Lumber Company will be overruled.

Appellant bases his similar contention with respect to the time of the filing of the statement of lien of the Hot Springs Plumbing & Heating Company upon the fact that no plumbing work was done on the building between January 24th and April 17th. As to the explanation for this interruption, the trial court rejected defendant's proposed finding of fact to the effect that the plaintiff had been unwilling to rely upon defendant Standau's personal credit. There is evidence to indicate that the plumbing work was done as fast as the progress being made in the construction of the building permitted. For obvious reasons, we think appellant's contention to be without merit.

The third point relied upon for reversal of the judgment in favor of the Love Lumber Company is that the trial court erred in permitting the introduction into evidence of sales slips to prove the claim of the lumber company over appellant's objection that the statutory foundation for their admission had not been laid. The specific objection was, and is, that before the court could permit their introduction into evidence, some customer must have testified that the firm usually kept correct accounts. Section 45-614 of the 1929 Compilation. We cannot sustain this contention. In McKenzie v. King, 14 N. M. 375, 93 P. 703, 704, it was pointed out that the conditions imposed by that statute "do not apply to books kept by a clerk of the one in whose

business they were kept, if such clerk is produced as a witness and testifies that he made the entries in the account offered in evidence as bookkeeper in the regular course of business and substantially at the time of the transactions recorded."

The makers or entrants of the slips of original entry having been produced upon the witness stand, neither the requirements of the statute nor of the common-law business entries exception to the hearsay rule, which the statute supplemented, are here involved, and the slips were admissible as past recollections recorded. See Wigmore, § 1560.

██ ██Appellant's next point relied upon for reversal is directed to the claims of both the Love Lumber Company and the Hot Springs Plumbing & Heating Company, and is that there is a fatal variance between the lien claims and the proof in that the terms, time given, and conditions of the contracts as stated in the lien claims are not the terms, time given, and conditions of the actual contracts as proven.

The following proposition is advanced by counsel in support of this contention. We quote from the brief: "Where the lien claim is silent regarding the prices to be charged, the presumption is that the prices will be fair and reasonable prices usually charged in the place where the contract is to be performed; in other words that where the contract set out in the lien claim is silent on prices, it will be presumed that a quantum meruit is contemplated; but when it afterwards appears that a quantum meruit, the usual prevailing prices, were not contemplat-

ed, but the prices usually charged by the materialmen, then the lien claim is at variance with the facts."

We have carefully examined the authorities cited by appellant in support of the various elements of the proposition advanced. Assuming, without deciding, that it is not too broad a generalization from the cases, we believe it to be nevertheless inapplicable to the situation here involved.

The pertinent portion of the lien claim of the Love Lumber Company is set out earlier in this opinion. Counsel, in advancing his contention, seems to assume that the significant "contract" is the agreement of December 11th. The statement of lien referred to above shows, however, on its face, that the agreement of that date, and the later agreement of February 12th, were agreements as to nothing more than the time and method of payment of such materials as should be ordered. Attached to the statement of lien is an itemized account, giving the dates on which the materials were furnished and the prices therefor. Hence the rule of law contended for by appellant, and for which cases are cited, to the effect that, in the absence of a price term in the contract under which work is done or materials are furnished, the presumption is that a quantum meruit is contemplated, would seem to have no application here. The plain inference from the matters set out in the statement of lien is that Standau was to pay the prices charged, rather than the vague "reasonable value." His acceptance of the materials would preclude his successfully contending otherwise, under

fundamental principles of offer and acceptance.

However, there is another reason why appellant's contention cannot be sustained. Even assuming the presumption of quantum meruit is to be entertained, there is testimony in the record to the effect that the prices charged represented the reasonable value of the materials furnished. That such evidence was elicited by means of leading questions, as appellant maintains, is not fatal to its consideration. The allowance of leading questions rests largely in the discretion of the trial court. Territory v. Meredith, 14 N. M. 288, 91 P. 731.

We shall not take up additional space to set out the pertinent portion of the statement of lien of the Hot Springs Plumbing Company. Suffice to say that, for the reasons above advanced, appellant's similar contention of variance between that statement of lien and the proof must be overruled.

Appellant's last point relied upon for reversal is that the lien claims are void because not properly verified.

The verification of the statement of lien of the Love Lumber Company reads as follows: "On this sixth day of August, 1930, before me personally appeared J. E. Love, manager and one of the partners of the said Love Lumber Company, to me known to be the person who executed the foregoing instrument and acknowledged that he executed the same as his free act and deed; that the name of the owner, the name of the claimant, the description of the property upon which the lien is

claimed and the itemized statement hereto attached are correct."

Appellant contends that the verification is defective in that: "Affiant does not swear that Fred Standau was the lessee in possession to whom the material was furnished, nor that the terms stated in the lien notice were the terms, time given and conditions of the contract."

The verification of the statement of lien of the Hot Springs Company, which is alleged to be defective in similar respects, reads as follows: "H. D. Robbins, being first duly sworn, on oath says that he is one of the partners of the Hot Springs Plumbing & Heating Co., of Hot Springs, Sierra County, New Mexico; that the itemized statement hereto attached, the owner of the property above described and mentioned in this lien claim, the description of the property is true and correct."

Appellant's argument is that had the affiants merely signed the notices and the notary added, "sworn and subscribed to before me," the verifications would have been sufficient, but that by making oath to part of the statement and not to all of it, the lien claimants limited their verifications.

While it is not necessary that the verification of a claim of lien restate the facts on which the claim of lien is based, and while a general verification to the effect that the facts stated in the statement of lien are true is sufficient, it has been held that a verification covering some, but not all, of the essential elements of the statement of claim is insufficient. Minor v. Marshall, 6 N. M. 194, 27 P. 481, 487; McDonald v. Rosengarten, 134

Ill. 126, 25 N. E. 429; Orr & Lockett Hardware Co. v. Needham Co., 169 Ill. 100, 48 N. E. 444, 61 Am. St. Rep. 151; El Reno Electric Light & Tel. Co. v. Jennison, 5 Okl. 759, 50 P. 144.

The cases cited are the only cases which we have been able to find involving the rule contended for by appellant. Though they support appellant's contention, it is doubtful whether we should look upon them as precedents. Minor v. Marshall was decided at a time when the rule of strict construction of the mechanic's lien law prevailed in this jurisdiction. The Illinois court likewise was and is probably committed to the rule that the Mechanic's Lien Law, being in derogation of the common law, is to be strictly construed. See May, Purington & Bonner Brick Co. v. General Engineering Co., 180 Ill. 535, 54 N. E. 638, and cases there cited; North Side Sash & Door Co. v. Hecht, 295 Ill. 515, 129 N. E. 273; Schoenberg Mfg. Co. v. Broadway Central Hotel Corp., 259 Ill. App. 40. The holding of the court in the El Reno Case, supra, was not fatal to claimant's obtaining relief, for the Oklahoma statute permits the amendment of statements of lien.

In Ford v. Springer Land Ass'n, 8 N. M. 37, 41 P. 541, subsequent to the decision by the territorial court in the Minor Case, supra, the rule of strict construction which had been laid down in Finane v. Hotel Co., 3 Gild. (N. M.) 411, 5 P. 725, and approved by the majority opinion in the Minor Case, was definitely repudiated, and this court is now firmly committed to the contrary rule of construction. See Lyons v. Howard, 16 N. M. 327, 117 P. 842, 843.

In Minor v. Marshall, it is true, the court said that only a substantial compliance with the requirements of the statute as to the statement of lien and the verification is necessary. And yet it is apparent that the rule of statutory construction adopted must necessarily color one's view as to whether or not a given verification meets the test of substantial compliance with the requirements of the statute. It is therefore probable that the dissenting view of Mr. Justice Freeman in the Minor Case, a liberal constructionist, rather than the view taken by the majority of the court in that case, more nearly coincides with the view which would be taken at the present day as to the sufficiency of the verification there involved. In his dissenting opinion, Mr. Justice Freeman said: "I think the better rule may be stated as follows, to-wit: That where it appears that the miner or mechanic has used words which by plain intendment were designed to operate as a verification, and where it is evident that the miner or mechanic was endeavoring to secure the benefit of the statute provided for such cases, and where such statement is sworn to, it ought to be regarded as a verification, within the meaning of the statute."

In Lyons v. Howard, supra, it was pointed out that: "The verification of a claim of lien is not for the purpose of proving the lien. The statement of lien, verified as required by law, and recorded, is a mere notice that the claimant intends to avail himself of his right to a lien. As an evidence of his good faith in the matter, he must verify same on his own oath, or the oath of some other person."

■ The averments of the statements of lien as to the name of the owner of the property against which the liens were claimed, and the description of the property, are specifically verified. Moreover, each of the verifications here involved swear to the truth of the "itemized statement hereto attached." The itemized statements referred to contain the name of the person to whom materials were furnished and for whom labor was done, together with the dates thereof and the indebtedness incurred therefor, constituting the statement of claimants' demands. The verifications are inartistically drawn, but we do not feel that we would be justified in striking down the liens merely because the claimants, particularizing as to some of the matters contained in the statements of lien, and attempting to generalize as to the remainder, chose, in this attempt, language not sufficiently broad to literally cover all of the statements contained in the claims as to the "terms, time given and conditions of their contracts." The statute merely provides generally that claims be "verified." It makes no specific provision as to the contents of such verification or the form thereof. We are of the opinion that the verifications here involved fulfill the manifest purpose of the statutory requirement, i. e., that the claimant evidence the good faith of his claim of right to a lien, and that the highly technical objections urged to their sufficiency by appellant cannot be sustained.

■ We come now to a consideration of the cross-appeal of the Love Lumber Company. The trial court disallowed an item for $225.58 for Celotex furnished by the lumber company, "because the same was not contemplated in the original agreement between the parties." The evidence clearly indicates that the materials were furnished under no specific agreement as to the kinds and quantities of material to be furnished. The evidence likewise indicates that materials for making partitions in the inside of the building were contemplated at the time of the original agreement, but that Standau did not designate what kind of material he wanted to use for such partitions until he began work on the interior of the building—at which time he ordered, and the lumber company furnished him with, Celotex. We know of no principle of law which would preclude the lumber company's recovery therefor.

The judgment in favor of the Hot Springs Plumbing & Heating Company will be affirmed, and the judgment for the intervener, Love Lumber Company, will be modified, with directions to include therein the disallowed item of $225.58 for Celotex furnished, and the sum of $100 will be allowed to appellees for attorney's services in this court, to be taxed as part of the costs against appellant. It is so ordered.

WATSON, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.