### GROFF et v HARRIS et

Ohio Appeals, 9th Dist, Summit Co

No 2339. Decided Dec 3, 1934

Carl M. Myers, Akron, for defendant The Brown-Graves Co.

Motz & Morris, Cuyahoga Falls, for defendants George B. Hazlett and The Northern Realty & Development Co.

Smoyer, Kennedy, Smoyer & Vogel, Akron, for defendants Letha M. Hopkins and Eugene Hopkins.

## OPINION

By FUNK, J.

We have set out the happening of the various transactions concerning the property in question, and the respective dates of their happening, as reflecting upon the probability of the Brown-Graves Co. having had a reasonable opportunity to obtain notice that the construction of said house had been indefinitely abandoned, not only by the principal contractor, Mr. Harris, but also by the Hopkinses.

Counsel for Brown-Graves Co. claims that—

"The only question involved is as to when, under all the facts of this case, the statute began to run for the purpose of filing a mechanic's lien. The Brown-Graves Company claims it never had any notice of abandonment of the contract by the contractor; that by reason of Hopkins' promises to them and their joint efforts to secure a loan over a period of a year and a half in order to complete the building, the time within which to file a lien had not expired when the Brown-Graves Company lien was actually filed in April, 1932; and that the last material was furnished and the lien filed for the purpose of giving notice to the Hopkinses that, although they were still trying to secure a loan, the Brown-Graves Company had elected to treat the contract as abandoned as of that date."

While counsel for Brown-Graves Co. does not claim that a formal notice of abandonment of the contract with Harris was necessary, he does claim that, because Mr. Hopkins kept saying he would finish the house if he could get a loan for his wife, and because all the material contracted for by Mr. Harris had not been delivered, and because said company had not been notified that Harris had abandoned the contract or would not be permitted to complete the house, said company had a right to assume that he (Harris) would do so and that the contract was not abandoned, and that said company was therefore entitled to complete or abandon the contract at its election so long as it was not so notified, and that it accordingly had a right to deliver ma-

terial without an order from anyone for the purpose of fixing a time within which the 60-day period would run for filing a lien, and that the filing of the lien was in effect the giving of notice to the owner (Mrs. Hopkins) that the Brown-Graves Co. had elected to treat the contract as abandoned.

We find no evidence in the record that Mr. Hopkins promised the Brown-Graves Co. anything. The testimony of Mr. Tuck is to the effect that, if a loan could be obtained, the house would be completed, and that if he (Hopkins) "completed the house it was assumed he would use the material."

The provisions of the mechanic's lien law in Ohio apparently do not contemplate a situation such as we have in the instant case. However, the courts in this and other states have recognized a rule that, where the construction of a building has been indefinitely abandoned on account of the act of the owner, through no fault of the principal contractor or subcontractors, the time within which a lien may be filed should not be from the time of the furnishing of the last material or the completion of the building, as the particular statute of the state may provide, but should be from a reasonable time after the time of some fair notice or knowledge, either actual or implied, of such abandonment, within which to determine what such lien claimant should do under all the facts and circumstances in the particular case, or should be at least from the time of such notice or knowledge of abandonment.

In other words, where the completion of a building is indefinitely abandoned, the date of the fair notice or knowledge of the abandonment, or a reasonable time thereafter, within which a lien claimant may determine what he will do, is to be considered the date fixed by statute from which to calculate the time within which a lien may be filed, rather than from the actual time of the completion of the building or the furnishing of the last material or the doing of the last work, as the particular statute may provide.

1 O.C.D. 456, **Building Assn. v Hayes et.**

3 O.C.D. 564, 6 O.C.C. 516, **Pedretti & Sons v Stichtenoth.**

250 Fed. 185, Feick v Stephens et.

**26 N.P. (N.S.) 257, at pp. 296-297, Ulmer et v Portage Construction Co. et.**

64 A.L.R. 271 (Oregon, 1929), Stark-Davis Co. v Fellows.

243 Pac. 104 (Oregon), James A. C. Tait & Co. v Stryker.

279 Pac. 848 (Oregon) Pac. Coast Steel Co. v U. & L. Const. Co.

1 Pac. (2d) 588 (Oregon, 1931), Block v Love.

27 Pac. (2d) 984 (New Mexico, 1933), Hot Springs Plumbing & Heating Co. v Wallace.

128 Minn. 261 (1915), Lamoreaux v Andersch.

**40 C. J., "Mechanics' Liens," §230, p. 195**

Assuming that such recognized rule is or should be the rule in Ohio, and that the Brown-Graves Co. had a reasonable time, after it had knowledge that said Harris had quit work because of lack of funds and the house had been boarded up, to find out the situation and ascertain whether or not Mrs. Hopkins could obtain a loan to complete the house, or whether the construction of the house had been indefinitely abandoned, or whether said Harris had permanently abandoned the contract or would not be permitted to complete it, when did the statute begin to run as against the Brown-Graves Co. for the purpose of its filing a mechanic's lien? and, was its claimed lien filed within the 60-day limitation of §8314, GC, under the evidence in the instant case?

When the Brown-Graves Co. learned that Harris had quit work because Mrs. Hopkins was unable to borrow the $4,500 by giving a mortgage on the property with which to pay for the completion of the house, and the representative of the Brown-Graves Co. made the effort he says he made to obtain such loan and said company thereby knew that it was then impossible for Mrs. Hopkins to so borrow said sum, it would seem that such information was sufficient to at that time put said company on notice that the house had been boarded up and that the completion of said house had been indefinitely postponed or abandoned, and be notice to said company that it would then have only a reasonable time in which to ascertain the situation and determine what it should do; and the time taken in this case, to-wit, more than two years, could not be considered a reasonable time.

Moreover, the Brown-Graves Co. had at least constructive notice that Mrs. Hopkins had deeded the property away in October, 1930, which was about one and a half years before it claims to have elected to treat the contract as abandoned. Also, the instant case was commenced to foreclose plaintiffs' alleged lien more than six months before said Brown-Graves Co. claims that it elected to treat the contract as abandoned.

Under the evidence in this case, we do not think that the Brown-Graves Co. could sit idly by for over two years and make no effort to ascertain the situation and rely entirely upon the mere statement of Hop-

kins that he would complete the house if he could get a loan; and this is especially so when the Brown-Graves Co. admits that it knew in 1929, soon after said Harris had quit work on said house, that Harris had quit because of lack of funds and that it was then impossible to obtain a loan on the house, and further admits that it had no dealing whatever with said Harris, as said original contractor, after he had quit work on Nov. 1, 1929, and that the only talk it had was with said Hopkins, as agent for his wife, the owner, and with whom it had no contract whatever, and when the Brown-Graves Co. also admits it did not know whether Hopkins would complete the house himself or would have said Harris or someone else do it, that it never made any effort to collect from said Harris, who it knew was the principal contractor and with whom its contract for materials was made, but had all its talk with said Hopkins without any reference whatever to Harris.

Accordingly, under the evidence in this case, giving the Brown-Graves Co. the full benefit of the rule it contends for, we can come to no other conclusion than that it did not file its lien within the time required by law.

A decree may be drawn denying the Brown-Graves Co. a lien upon the premises in question.

WASHBURN, PJ, and STEVENS, J, concur in judgment.