United Masonry, Inc., Appellee, *v.* K. W. F., Inc., et al.; Westerly Towers Co., Appellant.

[Cite as United Masonry, Inc., v. K. W. F., 16 Ohio App. 2d 77.]

(No. 28719—Decided November 14, 1968.)

*Messrs. Class, Ketchel & Lawrence* and *Mr. Phillip A. Lawrence,* for appellee.

*Messrs. Gottfried, Ginsberg, Guren & Merritt, Mr. Sheldon B. Guren* and *Mr. Avery S. Cohen,* for appellant.

Corrigan, P. J. Appellant, Westerly Towers Company, appeals on questions of law and fact from a decision of the Court of Common Pleas of Cuyahoga County which granted appellee, United Masonry, Inc., a mechanic's lien in the amount of $38,000 on an apartment house owned by Westerly Towers Company.

Being an appeal on questions of law and fact, the cause is before us for hearing *de novo.*

Pertinent facts, as reflected by the evidence, disclose that over a period of time ending on October 7, 1964, appellee furnished materials and did masonry work on the apartment house which was then owned by K. W. F., Inc.

In November 1964, when K. W. F., Inc., determined that it was unable to continue with the project because of a stopping of funds for disbursements on the job by the bank, the principals of K. W. F., Inc., began negotiations to sell their interests in the project. At this point, many material men and other creditors filed mechanics' liens on the property. United Masonry did not file a mechanic's lien immediately, but waited until April 1, 1965. It had learned, on or about December 1, 1964, of defendant K. W. F.'s suspension of work on the building. It contends that it was lulled into the belief that the job had not terminated and that it would be invited back to finish its portion of the project as soon as the financial difficulties were overcome. It maintains further that it received no notice from the new owners of the apartment building until March 18, 1965, that it would not be allowed to finish its part of the job, after which date it filed a mechanic's lien.

The first assignment of error reads as follows:

"A court may not extend the time for filing a mechanic's lien beyond the sixty-day statutory period."

Many cases in Ohio have held that the statutes governing the perfection of a mechanic's lien must be strictly construed. *Manpower, Inc.*, v. *Phillips* (1962), 173 Ohio St. 45; *Robert V. Clapp Co.* v. *Fox* (1931), 124 Ohio St. 331; *C. C. Constance & Sons* v. *Lay* (1930), 122 Ohio St. 468; *Love Lumber Co., Inc.*, v. *Reaser* (1964), 4 Ohio App. 2d 354; *D. & H. Coal Co.* v. *Lay* (1930), 37 Ohio App. 433.

Section 1311.06, Revised Code, provides that the mechanic's lien affidavit must be filed within 60 days from the date the last material was furnished at the building, or from the date the last labor was performed. This requirement is mandatory. *King* v. *Ship Building Co.* (1893), 50 Ohio St. 320. Demann's Ohio Mechanic's Lien Law (2d Ed.) 220, Section 9.10; DeWitt's Ohio Mechanic's Liens 270, Section 157.

An exception to this strict rule is explained in *Groff* v. *Harris* (1934), 18 Ohio Law Abs. 101. There, the court held that a subcontractor who waited two years to file a mechanic's lien after he learned that the principal contractor had abandoned the project had waited too long. In so deciding, however, the court stated:

"Where the construction of a building has been abandoned by the act of the owner, through no fault of the principal contractor or subcontractors, the date of the fair notice or knowledge of such abandonment, or a reasonable time thereafter within which a lien claimant may determine what he will do is the date from which to calculate the time within which a lien may be filed, rather than from the actual time of the completion of the building, or furnishing of the last material, or doing of the last work as the particular statute may provide."

Under this assignment of error, appellant urges that the above-quoted statement from *Groff* is mere *obiter dictum* and not the law of Ohio. The facts of the instant case, however, do not require a decision on this point. Whether the 60-day statutory period is measured from the date the last material was furnished or labor performed, as expressed in Section 1311.06, Revised Code, or whether it is measured from the date appellee discovered that K. W. F., Inc., had abandoned the project under the theory of the *Groff case*, United Masonry still filed its lien too late.

Assignment of error number one is overruled.

Appellant's assignment of error number two reads:

"If Groff is the law of Ohio, the law and the facts of this case show there was an abandonment more than 60 days prior to plaintiff filing its mechanic's lien."

Appellant contends that the project was abandoned when work ceased in December 1964, whereas appellee maintains that even though work on the project ceased in December 1964, the project was not abandoned until March 1965, or, in any event, it did not learn of the abandonment until then. An analogous case relied upon by appellee is *F. Pedretti & Sons* v. *Stichtenoth* (1892), 6 C. C. 516. There, the court refused to deny a mechanic a lien on the premises despite the fact that the mechanic failed to file his lien until after the statutory time limit had expired. The facts revealed, however, that the owner of the premises asked the plaintiffs to suspend their work while the floor was put down. At various times plaintiffs returned to complete the work but were told by the owner to return at a later date. Eventually the owner told them that they would never be allowed to complete the contract. The court mea-

sured the lien period from the date they were informed by the owner that their contract had terminated rather than from the date of their last labor. In *Pedretti*, the owner of the premises clearly was attempting to take advantage of the statutory time period by refusing to allow plaintiffs to complete their contract. In the case at bar, however, the owner of the property, K. W. F., Inc., gave every indication of abandoning operations long before appellee sought its lien.

Two schools of thought prevail as to when an abandonment occurs. The first view, expressed by the Kansas Supreme Court, holds that actual cessation of work is the time of abandonment. *Chicago Lumber Co. v. Merrimack River Savings Bank* (1893), 52 Kan. 410, 34 P. 1045. The court stated, at page 415:

"We think the contention of the plaintiff in error, that abandonment of work on this mill is a mental act of the owners, is unsound; that it is a physical, visible condition, to be determined from an inspection of the premises. When Douglas & Bixby ceased to do anything toward the completion of their building, they abandoned the work, no matter how much they may have hoped, expected or intended to be able to resume, if subsequent events show that they never did in fact resume work. If the owner temporarily suspend work on the building, and thereafter resume, no doubt liens might be taken within the statutory period after completion of the work; and if it were a fact in this case that the owners had resumed work for the purpose of completing the building as originally planned, a different question would be presented. It is immaterial what the cause of the abandonment may have been. It is suggested that the reason in this case why the work was not further prosecuted is, that the savings bank failed to furnish Douglass & Bixby money they were to have loaned on the mortgage set up in their answer; that Douglass & Bixby wished and intended to get the balance of this money and apply it toward the completion of their mill, and therefore that they cannot be said to have abandoned their enterprise. In a certain sense, this view would seem to be fair; yet we think these facts go rather to show a cause for the

actual physical abandonment of the work than to negative the fact of such abandonment. Perhaps the most common reason for the abandonment of work on improvements of all sorts is the want of means or ability to go on. Probably, in a majority of instances, the owner still desires and intends if possible to complete his project. He abandons actual operations, not of his own volition, but from the force of circumstances he cannot control.''

The other viewpoint is best stated in an Oregon case which is cited in *Groff* v. *Harris, supra.* In *Stark-Davis Co.* v. *Fellows* (1929), 129 Ore. 281, 277 P. 110, 64 A. L. R. 271, the plaintiff recorded a mechanic's lien on January 2, 1927, to secure an amount due him for plumbing work done on a building. Defendants contended that they had abandoned the project in December 1926, and that plaintiff had failed to file his lien within the 30-day period required under the Oregon statute. The court, however, decided that there had been no true abandonment of the project, or, that if there had been, the fact was not communicated to the plaintiff. The court stated the rule as follows:

''In order to constitute a permanent abandonment of the construction of the building, so that the same would take the place of the completion mentioned in the statutes, there should be a cessation of operation and an intent on the part of the owner and contractor to cease operations permanently, or at least for an indefinite period, or some fair notice to or knowledge of the abandonment by a lien claimant, either actual or implied.''

If the Kansas rule is applied to the facts of the present case, it is clear that appellee failed to file its lien within 60 days after the project was physically abandoned. The record of trial reveals that all work on the project ceased in December 1964. If the Oregon test is employed, it is likewise apparent that appellee did not file its lien in time. The record in the cause before us clearly shows that the owner of the project, K. W. F., Inc., ceased work on the building and intended to abandon the project in December 1964. Indeed, the record reveals that negotiations for the sale of the project were begun in November 1964, and that an actual transfer of title occurred on December 3rd of that

year. The record reveals further that the owners of United Masonry were well aware that work on the project had ceased and that K. W. F., Inc., was looking for buyers. When Edward Kovacich, president of United Masonry, was asked on direct examination why he did not file a lien, he explained that he did not want to interfere with the sale. What admission could be more damaging? Was he induced or tricked into not filing his lien? Apparently not. Appellee's own witness, who at one time planned to take over the project, testified that to his knowledge, neither he nor Kertesz of K. W. F., Inc., ever gave any special inducement to appellee not to file its lien. It is significant that many other creditors did file their liens during December 1964, and January 1965. Why did United Masonry wait? Counsel for appellant expressed the most plausible reason in his final argument, all of which is borne out by the record:

"Plaintiff was sitting back looking for full payment from whoever would come in. The plaintiff knew the property was being sold. They knew it by at least implied notice of a recorded deed. They knew it by their own testimony that they talked with persons who identified themselves as buyers, and they knew it because the plaintiff talked to the persons who were ultimately the buyers."

Assignment of error number two is therefore sustained.

Also, from the above, it is clear that appellant's assignment of error number five—that the trial court ignored the applicable law and evidence in deciding this case—is correct, and it also is sustained.

It is suggested in the trial court's memorandum of opinion that appellant, Westerly Towers Company, is legally obligated to United Masonry because it must have been aware of United Masonry's claim when it contracted to purchase the property from K. W. F., Inc., in March 1965. This proposition, however, does not state the law. Absent a case of fraud, the only way a buyer of property can be held responsible for claims on that property is by purchasing it subject to a valid and legally recorded lien. United Masonry did not follow the lien statutes in this case, and therefore cannot claim the benefits of them.

Assignments of error numbers three, four and six are overruled.

Accordingly, the order, judgment and decree of July 13, 1967, of the court below to the effect that, "* * * Plaintiff, United Masonry, Inc., has a valid and existing mechanic's lien in the sum of thirty eight thousand and no/100 dollars ($38,000) together with interest at the rate of six per cent (6%) per annum from April 1, 1965, against the property described in the petition. Costs of this action are assessed against the defendant, The Westerly Towers Company, and the partners as individuals," and "3. Foreclosure is hereby ordered," is reversed and decree is for defendant, The Westerly Towers Company.

*Judgment reversed.*

SILBERT and CANARY, JJ.. concur.