73 P.2d 325

HOBBS v. MORRISON SUPPLY CO.

No. 4218.

*Supreme Court of New Mexico.*

Sept. 8, 1937.

Rehearing Denied Nov. 13, 1937.

E. D. Tittmann, of Hillsboro, for appellant.

J. C. Gilbert, C. J. Neis, and H. C. Buchly, all of Roswell, for appellee.

BRICE, Justice.

This suit was brought by the appellee against Ira A. Jones and J. H. Brizendine to foreclose a mechanic's lien against certain property in Hot Springs, N. M. After the filing of this suit, appellant acquired the interests of the defendants in the property involved, and intervened in the case. The court found in favor of appellee against the defendants and assessed its damages at $1,829.08, and interest; and as against defendants and intervener decreed a foreclosure of the mechanic's lien and ordered a sale of the property, the proceeds to be applied to the damages found. From this decree, the intervener appealed.

The following facts, essential to a determination of this case, are taken from the findings of the court:

The appellee sold and delivered to Ira Jones and J. H. Brizendine plumbing materials of the value of $1,876.35, to be used in constructing a building on certain lots in Hot Springs, N. M., and all was so used except material of the value of $42. That the materials mentioned were furnished on a running account, from and including the 26th day of December, 1931, to and including the 5th day of April, 1932, during which time the building and lots in question belonged to the defendants Ira Jones and J. H. Brizendine. To secure the debt for the materials furnished the plaintiff, on the 26th day of July, 1932, filed in the office of the county clerk of Sierra county, N. M., its claim of lien against the building and lots mentioned. The building and lots in question were conveyed by the defendants to intervener on the 12th day of September, 1932, subject to, and with knowledge of, the claim of lien of the plaintiff. The appellee took security from the defendant Jones in the amount of $676.41 to protect its account, at or immediately prior to the time it commenced to furnish such material.

It was adjudged that plaintiff should recover as against the defendants $1,876.35 for material furnished, $5 for preparing note and mortgage, $328 interest, $250 attorney's fees, and $219.34 costs in the district court; a total of $2,678.69.

. That of this sum a mechanic's lien was adjudged to exist against the lots and building in question to secure the following items: $1,876.35 for materials furnished, less $42 not used in the building, and less $676.41 for which appellee had taken security, making $1,157.94; to which was added $201.80 interest; $250 attorney's fees and $219.34 costs of court, a total of $1,829.08, for the payment of which the lots and buildings were decreed to be sold and proceeds of sale applied thereon.

The claim of lien filed stated the terms to be "2%—2—10—32, net 2—29—32 . 60 days." The complaint stated that the recorded lien as filed contained the terms and conditions thereof. The appellant contends that the evidence establishes that the account was to be paid when the building was finished, or a loan had been obtained.

██ Appellee's witnesses are quoted as stating that the account was to be paid when "the building was finished," and defendant Jones as stating that the material was to be paid for "when the loan was executed on the building, or the property sold, whichever came first; whenever we got the building completed and the loan." The appellant requested the following finding of fact:

"The material and supplies for which this lien is claimed were sold to defendants Ira Jones and J. H. Brizendine by plaintiff on the understanding that they would be paid for when the building was finished or a loan had been obtained."

The court refused the requested finding, and correctly so, as no witness so testified. According to the weight of the testimony, the material was to be paid for when the

building was completed; but no specific request was made of the court to find on the particular point; and no point is made of the fact that no finding was made thereon. The refused requested finding of fact quoted is the basis for appellant's first point, which is as follows:

"The proof of the terms and conditions of the contract disclosed a fatal variance with the terms and conditions of the contract as stated in the recorded lien claim and in the complaint."

There being no findings of fact from which we could determine the question, it must be ruled against appellant.

Before appellee furnished any materials for the building in question, defendant Jones, on its demand, executed a note payable to it in the sum of $1,200, secured by a mortgage on real estate other than that in suit. The note was partly for an old debt due appellee by Jones, and the balance of $676.41 was security to protect the material account in suit.

The court found:

"That when the plaintiff commenced to furnish the said goods, wares, merchandise and materials aforesaid, or immediately prior thereto, the plaintiff took and received of and from the defendant, Ira Jones, certain security in the amount of $676.41 to protect itself in the furnishing of said goods, wares, merchandise and materials."

Taking security for a portion of the material bill did not invalidate the lien as to the balance because of section 82-409, N.M.Comp.St.1929, which is as follows:

"No person shall be entitled to a lien under this article who has taken collateral security for the payment of the sum due him."

This statute does not apply to materialmen's liens. It was enacted originally in 1852 and appears under "Mechanics' Liens" as section 5 of chapter 77 (page 560) of the Compiled Laws of 1865, and reads:

"No person shall be entitled to a lien under this act who has taken collateral security for the payment of the sum due him."

It is in these exact words in the compilation of 1884 (section 1538), and of 1897 (section 2235). The original act provided for liens in favor of those furnishing material for buildings, hence the collateral security statute applied to such liens.

But, in the New Mexico Code of 1915, the lien statutes (section 3318 et seq.) were divided into articles; the first having reference to those of mechanics and materialmen, and the second to artisans, mechanics, landlords, innkeepers, etc., and the collateral security statute was included in article 2 only and changed to read: "No person shall be entitled to a lien under this article, who has taken collateral security for the payment of the sum due him." Section 3335. This has been followed in amendments of article 2 by chapter 65 of N.M. Laws of 1917 and the amendment to the 1917 act by chapter 24 of N. M. Laws of 1923.

The Code of 1915 was a single act entitled, "An Act to Codify the Laws of the

State of New Mexico" and the enacting clause reads: "Be It Enacted by the Legislature of the State of New Mexico:" and there followed the 5,901 sections of the Code. We stated in Ex parte Bustillos, 26 N.M. 449, 450, 194 P. 886, 890, with reference to the 1915 Code:

"There is the general enacting clause at the beginning of the act, and, under all rules of construction and interpretation, every section from the first to the last is to be held to be enacted by the act. It will be immaterial as to the source of the matter included in the act, whether coming from old statutes, decisions of the court, or whether the matter be entirely new."

Among the provisions of the repealing and saving clause of the N.M. Code of 1915 (page 1665) are the following:

"The provisions of the foregoing sections, taken or adopted from existing statutes shall be construed as continuations thereof, and not as new enactments."

"All acts and parts of acts of a general and permanent nature not contained in this codification, are hereby repealed."

Upon enactment of the N.M. Code of 1915, the wording of the statute was changed so that it applied only to statutory liens in favor of artisans, landlords, innkeepers. etc., and not to those furnishing material for buildings; that is, it applied only to those statutory liens created by the several sections of the statute under article 2 of chapter 67, Code 1915, entitled "Liens" and to none other. This excludes the liens of materialmen from the application of the statute, as they are provided for by article 1 of the chapter.

Subsequent legislation, as we have heretofore stated, continued to apply the statute in question to those liens created by article 2 of chapter 67 Code 1915. The title of chapter 65, Laws 1917, reads: "An Act to Amend Article II of Chapter LXVII of the Statutes of 1915 Relating to Liens of Artisans, Landlords and Others." And the statute in question is section 24 of that act. Only article 2 is amended.

The title to chapter 24, N.M. Laws 1923, is as follows:

"An Act to Amend Chapter 65 of the Session Laws of New Mexico of the Year 1917, Being An Act to Amend Article Two of Chapter LXVII of the Statutes of 1915 Relating to Liens of Artisans, Landlords and Others."

In this act only article 2 of the chapter on liens is amended, and no reference is made to article 1. The provision in question, with reference to collateral security, is re-enacted as section 24 of that act.

Clearly the present statute with reference to the taking of collateral security by those entitled to liens does not apply to materialmen's liens. In the compilation of 1929 (which was not a re-enactment), the lien laws were subdivided into articles and those with reference to mechanics, landlords, innkeepers, etc., appear under article 4 of chapter 82, and the collateral security statute is in the same words as in the Code of

1915 and subsequent enactments. But the Code of 1915 fixed the limits of its application, as we have stated.

The district court did not err as against appellant in holding that the appellee's lien was not waived by reason of its taking collateral security; but did err in holding that appellee had waived its lien to the extent of the collateral security taken.

■ The appellant's third point is as follows:

"The facts disclosed at the trial show that the plaintiff, Morrison Supply Company, filed a lien claim which it knew to be excessive and that the entire conduct of the plaintiff in connection with the attempt to make the intervenor pay the lien claim was tainted with fraud, by reason of which, this being a suit in equity, plaintiff is not entitled to relief from the court against the intervenor."

We find nothing in the facts found by the court, upon which to base such a conclusion. But appellant contends that the court erred in his refusal to adopt his requested findings of fact Nos. 7 and 8, and but for such error the point would be supported by the necessary facts. These requests are as follows:

"At no time did plaintiff credit defendants on the lien claim or in the judgment taken against defendants personally with any portion of the amount plaintiff received from the foreclosure sale.

"Intervenors became owners of the property against which the lien is sought to be foreclosed after the lien claim was filed and this action was brought and one of the considerations for the transfer from Jones and Brizendine was the release of a note and mortgage by Jones to intervenors which mortgage antedated the contract between plaintiff and Jones & Brizendine."

The court found at appellant's request that the mortgage securing the $1,200 note mentioned was foreclosed; that the appellee did not disclose the fact that the mortgage was taken, foreclosed, and the mortgaged property sold, until brought out on cross-examination of appellee's witnesses at the trial.

But if the court had adopted appellant's requested findings, these facts with those found by the court would not necessarily establish that the appellee filed a claim of lien that it knew was excessive. It was entitled to a lien for the full amount of its debt, notwithstanding it took collateral security, and it does not appear that the mortgage had been foreclosed prior to the filing of appellee's lien.

■ Appellant requested as a conclusion of law the following: "The failure of plaintiff to deduct from his lien claim the amount actually received on foreclosure sale of the Jones mortgage and its failure to disclose to defendants and intervener or either of them, the fact that such foreclosure proceedure produced a credit towards the payment of the lien claim, and the taking by plaintiff of a judgment against defendants personally for the entire amount claimed without deducting the proceeds of

the foreclosure sale constitutes a fraud in law and defeats the lien."

There are findings to the effect that the mortgage securing the $1,200 note had been foreclosed and the property sold, but no finding as to the amount realized therefrom. We know from a stipulation in the record that it was $400 and that this was not allowed defendants in the collection of the amount due by them to appellees, though agreed to by the parties. But appellant was allowed as a credit $676.41, the face amount of the collateral in. ad of the amount realized therefrom.

The fact that the appellee took judgment against defendants for their debt without crediting the $400 proceeds of foreclosure sale constituted no fraud on appellant, as more than that amount was wrongfully deducted by the district court from appellee's lien claim. The appellee, it is true, did not disclose to defendants and intervener, or either of them, the fact that they were entitled to a credit on the account resulting from such foreclosure proceedings. But there is nothing to show, nor any finding or conclusion of the court, that such failure was due to fraud on the part of appellee. It could have been an oversight. The court having refused to adopt the proffered conclusion of law No. 6, requested by appellant, it in effect was a holding that the acts of appellee stated therein did not constitute fraud. Plaintiff did take judgment against the defendants for the amount of its claim without deducting the $400 proceeds of the foreclosure sale. This was apparently an error of all the parties and the court, as appellee stipulated that defendants were entitled to the credit, and they should have called the court's attention to the fact that the credit was not allowed. They are not complaining here, and appellant was not affected by it.

■ The appellant lost the case in the district court and that court did not err in awarding costs against him. District courts are given discretion in the matter of assessing costs, but ordinarily they are assessed against the losing party.

The appellee, by a cross-appeal, presents two points:

■ The court allowed appellee $50 attorney's fees for preparing and filing a lien and $200 for its foreclosure. It is claimed that as there was testimony of several attorneys to the effect that such services were of the value of $500 or $600 and no contradictory testimony, that the finding was not supported by substantial evidence, should be set aside, and one conforming to the evidence of witnesses substituted. We think, considering the amount involved, any such claim of attorney's fees is excessive. We would not disturb the judgment of the district court on the question of attorney's fees unless clearly erroneous, and we do not find it so.

■ Appellee claims that $676.41 should not have been deducted from the bill for material in determining the amount secured by the lien. It is stated:

"The court erred in allowing a credit in favor of the interveners of $676.41. The

interveners should have been allowed approximately $400.00 credit on this account for the testimony shows that $361.78 was received from the sale of the DeBaca County land, and credited to the account of Jones and Brizendine."

The record shows the following stipulation of parties:

"Mr. Tittman: We will agree that since this suit was filed that $400.00 should have been credited on the account. Is that satisfactory to you?

"Mr. Gilbert: Counsel agrees that $400.-00 since the filing of this suit, and when this is cleared up it should be credited on this lien. * * *

"The Court: As I understand it it is stipulated that there is a credit due under this account to the extent of $400.00 on account of collections made subsequent to the filing of this suit.

"Mr. Gilbert: Yes."

This $400 was the excess over the old debt due appellee for which the mortgaged security was sold. The court allowed the $400 in favor of defendant, but as he had reduced appellee's claim by $676.41 because it took collateral security for that amount, the credit was in excess of the $400.

The contention of appellee is correct. The district court should not have deducted $676.41 from appellee's claim of lien, but should have allowed the credit for $400 on its account, as the parties stipulated.

The judgment of the district court will be reversed upon appellee's cross-appeal, with instructions to deduct $400 from appellee's total claim and foreclose its materialman's lien for the balance.

It is so ordered.

HUDSPETH, C. J., and BICKLEY and SADLER, JJ., concur.

ZINN, J., did not participate.

On Rehearing.

BRICE, Justice.

We inadvertently stated in our original opinion regarding appellants' requested finding No. 1, "The court refused the finding, and correctly so, as no witness so testified." Appellant points out that the defendant Jones, as a witness for appellee, did so testify. The opinion, however, shows that two witnesses testified to the contrary. The court's refusal of the requested finding was warranted.

There is no merit in the motion for rehearing, and it is overruled.

It is so ordered.

HUDSPETH, C. J., and SADLER and BICKLEY, JJ., concur.

ZINN, J., did not participate.