175 P.2d 684

**SUNDT v. TOBIN QUARRIES, Inc.**

No. 4939.

Supreme Court of New Mexico.
Dec. 20, 1946.

Simms, Modrall, Seymour & Simms, Irwin S. Moise and Joseph T. Cole, Jr., all of Albuquerque, and Roy W. Crimm, of Kansas City, Mo., for appellant.

Quincy D. Adams and Edward P. Chase, both of Albuquerque, and William W. Gilbert, of Santa Fe, for appellee.

BRICE, Justice.

The plaintiff (appellee) sued the defendant (appellant), to recover damages alleged to have been sustained because of defendant's breach of a contract, by the terms of which the defendant agreed to deliver to plaintiff approximately 10,000 cubic yards of screened sand, to be used by plaintiff in the preparation of sealing material for the resurfacing of two portions of state highways; also to recover for the use of certain equipment used by defendant, and the value of labor performed for defendant by employees of plaintiff.

The facts found by the trial court necessary to a decision are substantially as follows:

On June 23, 1944, the plaintiff was awarded by the New Mexico State Highway Commission contracts for resurfacing two sections of highways in New Mexico, to be completed according to specifications within sixty "weather working days." A part of the material required for the resurfacing projects was approximately 10,000 cu. yds. of screened sand. On July 5, 1944 the State Highway Commission notified the plaintiff to commence the work of resurfacing under his contracts, and in compliance therewith he commenced work on July 14, 1944. On July 24, 1944 he ordered in writing from the defendant 8913 cu. yds. of screened sand to be used on the road projects, which order the defendant accepted, and thereupon agreed to deliver the sand to plaintiff, F. O. B. Logan, New Mexico, for $1.25 per cu. yd.

The defendant was informed "at or prior to the time the orders were placed" that the plaintiff was under contract to complete the road projects within sixty "weather working days." Although defendant may not have known the exact time limit on the contracts, it did know that the time for completing the resurfacing projects was short, and was approximately the time stated in the contracts; that is, "sixty weather working days."

The plaintiff obtained the screened sand required for the resurfacing of the two highway projects mentioned, by other means and from other sources than from the defendant (except 938.9 cu. yds. furnished by defendant under the contract) at a cost in excess of the price at which defendant had agreed to furnish it. Upon being required to start the work of resurfacing under his contract, the plaintiff, on his own account and with his own labor and equipment, began the production of screened sand. By July 28, 1944, he had produced 660 cu. yds. In the latter part of August, and until September 6, 1944 he produced 976 cu. yds. Between September 8 and September 22, 1944, he produced 1492 cu. yds. Between September 1 and September 15, 1944 (at another mine) he produced 1443 cu. yds. The remainder of the screened sand necessary for completing plaintiff's resurfacing

contracts was bought on the market from dealers.

Commencing September 15, 1944, plaintiff could have obtained the full amount of screened sand from commercial producers in Amarillo, Texas at $1.15 per ton F. O. B. Amarillo. None of the screened sand was used in the highway resurfacing in question until October 7, 1944.

The defendant is indebted to the plaintiff in the sum of $2996.04 for the use of men and equipment in the production of screened sand in an attempt to carry out his agreement with plaintiff.

The following findings of the Court are copied in full, as it is asserted by defendant that they are not supported by substantial evidence, to-wit:

"IV. That although plaintiff was ready, willing and able, at all times while said highway projects were in course of construction, that is, from about July 24, 1944 to about November 21, 1944, to accept delivery of said sealing material and pay for same upon delivery as agreed, defendant wholly failed to deliver any of said sealing material ordered except 938.9 cubic yards thereof."

"XX. That plaintiff would have completed the two highway projects, for which it was under contract with the Highway Department of New Mexico, on or prior to October 12, 1944, had it not been for de-

fendant's breach of its contract with plaintiff."

"XXI. That the delay in completion of the two highway projects by plaintiff, caused by defendant's breach of contract, damaged plaintiff."

"XXII. That the delay in completion of the two highway projects by plaintiff, caused by defendant's breach of contract, damaged plaintiff to the extent of $1000.00."

"XXIV. That the cost of the 1443 cubic yards of material produced by plaintiff between September 1, 1944 and September 15, 1944 was in excess of the contract price of the material to be furnished by defendant, considering freight."

"XXVI. That the excess of the market price of sealing material, ordered by plaintiff from defendant but not delivered, over the contract price, considering freight, amounts to $13,678.89."

The defendant is entitled to a credit of $1173.63 for the 938.9 cubic yards of sand delivered to, and accepted by, the plaintiff. That there is a balance due the plaintiff by the defendant of $16,501.30, for which he is entitled to judgment.

The defendant asserts that the trial court erred in refusing to make its requested findings of fact, numbers 12, 13, 15, 18, 19, 20, 21, and 24. Assuming that the facts therein stated were so conclusively proven that this court should accept them as true,

we find that all except request No. 18 were statements of evidentiary facts. The trial court is required by the rule to make findings of ultimate facts only. We do not find it necessary to consider these requests specifically, but see Christmas v. Cowden, 44 N.M. 517, 105 P.2d 484, 487, where we stated that "The trial court is called upon to make findings of the ultimate facts only." See also Paulos v. Janetakos, 46 N.M. 390, 129 P.2d 636, 142 A.L.R. 1237.

Requested Finding of Fact No. 18 is as follows: "That on the evening of October 3, 1944, Gene Sundt called Chet Roweth by telephone and made certain agreements substantially as set forth in plaintiff's Exhibit 'O.'"

A finding of fact must be complete within itself, without reference to the testimony. If it was the intention of defendant by this request to propose a finding that would amount to a modification of the original contract, as we assume from defendant's argument that it was, its requested finding should have stated that the contract had been modified and in what particular.

On October 4, 1944 plaintiff wrote defendant a letter in which he stated that the parties had a telephone conversation and "from this conversation it is our understanding that:

1. In spite of the fact that you now face a probable loss in this venture you are willing to go on through with these orders, and will permit the operation of the sealing material setup to be carried on simultaneously with the ballast operation so that there will be no further shut downs in sealing material production.

2. We will submit to Frank May a statement of back-charges through September 30th, and thereafter at the conclusion of each calendar week. These charges will be checked by May and okayed if found to be in order.

3. Back-charges for use of our equipment shall be based on less than OPA Maximum rentals and shall be charged only for time operated. If Tobin Quarries do not feel that they can pay the rental charge on the Portable Screening Plant, we will donate the use of this plant at no charge. A list of rental rates for various pieces of equipment which are or might be required is attached hereto.

4. When the necessary quantity of material has been produced we will not make a drayage charge for removing our equipment except that equipment which, due to weight, cannot be transported across the Highway bridge at Logan, shall be delivered to us at Tucumcari at no cost to us. (Railroad delivered to Pit on deadhead freight). The boiler which belongs to Nate Skousen in Albuquerque, N. M. shall be returned to him at Tobin Quarries expense."

We will assume as a fact that the parties had the "understanding" set out in the letter mentioned. In regard to this "understanding" defendant states:

"Under the original orders as placed by plaintiff with the defendant, there was an obligation on the part of the defendant to furnish 8,913 cubic yards of material, and on the part of the plaintiff to receive and pay for the same. By the terms of the letter of October 4, the defendant was to furnish a lesser quantity over a different period of time, using men and a separate screening plant furnished by plaintiff at defendant's expense. * * * After October 4, when the plaintiff had waived the time elements in the original contract, the plaintiff states in its letter of that date that he has 'another setup running' and that this results in 'somewhat reduced' quantities required from the defendant and that nevertheless the defendant has agreed to go ahead. It should be clear that after accepting these new terms as set out in the letter of October 4, the defendant could not longer insist upon the plaintiff receiving and paying for approximately 8913 cubic yards of material."

After stating the "understanding" of the parties, plaintiff stated in the letter: "We wish to assure you of our willingness to cooperate with you in any way that we can, and regret that you have encountered so much difficulty in getting started. As Frank May told you, we have another setup running, production from which though meager and costly, has somewhat reduced the quantities required from you. However, with oil now arriving, and more coming daily it will take our combined and continuous production to stay ahead of the oil. Should it prove however, that you can ship fast enough to keep ahead, we would be willing to suspend our other operation. In the meantime, please push your production as fast as possible."

It is obvious that the "understanding" stated in the four numbered paragraphs we have copied, contained no change in the terms of the contract; and it is equally obvious that the statement in the letter following the four numbered paragraphs which we have quoted, was not intended to be part of the "understanding;" and if it was, it is not a waiver of performance or a modification of the contract. Plaintiff advised the defendant that it would take their "combined and continuous production to stay ahead of the oil. Should it prove, however, that you (defendant) can ship fast enough to keep ahead, we would be willing to suspend our other operations." There was no proof that this statement was intended as a modification of the contract or a waiver of performance, except as to extension of time.

The plaintiff's contract with the state provided: "This contract must be completed in sixty (60) weather working days. Liquidated damages in the amount of one hundred

($100) per day will be collected for each weather working day necessary to complete the contract after the expiration of the allotted time."

Almost from the beginning it was apparent that defendant would not be able to fulfill its contract to furnish all of the sand it had contracted to furnish; also that plaintiff would either have to provide against such eventuality, or risk the loss of $100 per day for delays beyond sixty weather working days in the performance of his contract with the state.

If the defendant could have delivered the 8913 cubic yards of sand in time for use on the highway projects the plaintiff would have been liable therefor, even though he had produced sufficient himself for the projects; for the time of performance had been extended.

The statement in the letter referred to by defendant, "We have another setup running, production from which, though meager and costly, has somewhat reduced the quantities required from you," must be read in connection with the remainder of the letter on the subject of production. It stated further: "In spite of the fact that you now face a probable loss in this venture (showing damages were not waived), you are willing to go on through with these orders." (showing performance was not waived).

The letter, in addition to setting out the understanding or agreement, stated, "We * * * regret that you have encountered so much difficulty in getting started. * * * We have another setup running, production from which though meager and costly, has somewhat *reduced the quantities required from you."* Standing alone, as it is stated in the defendant's argument, there is some ground for defendant's contention. But the plaintiff continued: " * * * It will take our combined and continuous production to stay ahead of the oil." This clearly indicates that plaintiff was producing to prevent delays which would inevitably result if defendant alone produced. But to assure the defendant that plaintiff expected it to comply with its contract as nearly as possible, it was assured that plaintiff's production would not interfere with its performance. Plaintiff stated, "Should it prove, however, that *you can ship fast enough* to keep ahead, we would be willing to suspend our other operation. In the meantime, *please push your production as fast as possible."* (Our emphasis.)

The situation of the parties must be taken into consideration in construing the contents of the letter. The plaintiff was required to finish the resurfacing projects within sixty weather working days or forfeit $100 per day for the excess time required. Defendant had been unable to produce sand as contemplated, and by October 4, it was plaintiff's belief that defendant would not be able to furnish it all as required. To protect himself against damages for delay he set up

his own production outfit, with the understanding, however, that it would cease operating if defendant could supply sand sufficient to meet the construction requirements, which it was never able to do. Plaintiff's extension of time of performance will be referred to hereafter.

■■ In the absence of some evidence that the sand delivered was accepted in full compliance with the contract, or that performance or time of performance after extension had been waived, the defendant is liable to the damages incurred by its breach of contract. There is no statement in the letter (Exhibit "O") from which it could be inferred that the contract had been modified, or the plaintiff had waived damages, or had accepted the sand delivered in full compliance with the contract. The letter and other evidence indicates that plaintiff did all in his power to assist defendant in the production of the required sand. Under these facts, we conclude that there was no waiver of performance or damages, or modification of the contract except as to extension of time.

"There is no reason why the rule in the law of sales should differ from that elsewhere in the law of contracts. When insufficient performance is received by the buyer he should not be debarred from recovering damages because of the insufficiency, unless he has agreed to accept what has been offered him as full satisfaction of all his rights, or the seller's default is caused by excusable impossibility. There seems no ground for saying that the mere fact that he has taken the goods manifests such assent unless the parties have agreed that it shall. If ten barrels of flour are contracted for and five are sent, the fact that the buyer takes the five forwarded certainly does not indicate that he assents to the performance as a full satisfaction * * *." Williston on Contracts (Rev. ed.) § 702.

"The buyer need not accept any performance if the goods offered are too many or too few to satisfy the contract. Sometimes, however, he does take what is offered to him, but in such a case it is safe to assume that it would generally be held in the absence of other evidence of accord and satisfaction that the buyer could recover damages for the failure to deliver as much as the seller had agreed to deliver, though liable for the price or value of the portion actually delivered." Id. § 703.

Defendant's Point V is based upon an assumption that there had been a modification of the contract, or a waiver of performance of some of its terms; and since we hold that the contract had not been modified or performance waived, it need not be further considered.

The defendant asserts:

"The Court erred in refusing to make defendant's requested finding numbered 24,

which reads as follows: '24. That before another boiler could be procured by defendant, and on October 17, 1944, plaintiff dismantled his equipment which had been set up at gravel pit, New Mexico, and immediately thereafter caused the same to be loaded upon railroad cars to be shipped to another location, and removed all of plaintiff's men who had theretofore been furnished defendant in the production of seal coat material at gravel pit, New Mexico.' and in making in lieu thereof its findings numbered XX, XXI, and XXII, which are quoted as follows:

" 'XX. That plaintiff would have completed the two highway projects, for which it was under contract with the Highway Department of New Mexico, on or prior to October 12, 1944, had it not been for defendant's breach of its contract with plaintiff.

" 'XXI. That the delay in completion of the two highway projects by plaintiff, caused by defendant's breach of contract, damaged plaintiff.

" 'XXII. That the delay in completion of the two highway projects by plaintiff, caused by defendant's breach of contract, damaged plaintiff to the extent of $1000.-00.' "

■ We will assume that requested finding No. 24 is supported by substantial evidence; but so assuming, we are of the opinion that it is not material to a decision. From the argument in support of this requested finding, it would seem that defendant wishes to establish that its delay in performance was caused by the acts of plaintiff stated. But the fact that plaintiff removed his equipment and men from defendant's gravel pit establishes nothing material, in the absence of further findings to the effect that plaintiff was legally obligated to furnish defendant such labor and equipment; that such removal was without defendant's consent, and that it was the cause of defendant's delay in fulfilling its contract to deliver sand. The trial court did not err in refusing the request.

■ Regarding Findings Nos. XX, XXI and XXII, the defendant did not comply with Supreme Court Rule 15 in its attack thereon. We stated in Arias v. Springer, 42 N.M. 350, 78 P.2d 153, 157: "We are not authorized to review 'the evidence in the record.' The court made findings of fact and these findings are the facts of the case in this court unless set aside by this court upon direct attack, following Section 6 of Rule 15, which is as follows: 'A contention that a verdict, judgment or finding of fact is not supported by substantial evidence will not ordinarily be entertained, unless the party so contending shall have stated in his brief the substance of all evidence bearing upon the proposition, with proper references to the transcript.' "

■ The defendant stated the substance of the testimony favorable to its con-

tention that requested finding 24 should have been accepted; but, as plaintiff states, it made no reference to much that supports findings XX, XXI and XXII. In reviewing an attack upon a finding it is the supporting evidence, not that adverse to the finding, that ordinarily determines the issue. The record contains more than 500 pages of typewriting, and for the members of this court to read the entire record in considering each finding attacked to discover whether it is supported by substantial evidence would entail an unnecessary burden on the members of the court. However, we have examined the record sufficiently to satisfy us that the findings in question are supported by substantial evidence.

The trial court did not err in making Finding of Fact No. IV. It is supported by substantial evidence. The plaintiff's agent in charge of this business testified that if the sand had been delivered as agreed between the dates mentioned, it would have been paid for; that he advised defendant he would be glad to take anything it could furnish until the job was completed.

The trial court did not err in making Finding of Fact No. XXVI as follows: "That the excess of the market price of sealing material ordered by plaintiff from defendant but not delivered, over the contract price, considering freight, was $13,678.89."

Regarding this finding the defendant states: "The objection to this finding is based upon the fact that the trial court used as a basis for computation of the damages, the total maximum amount of materials ordered originally by the plaintiff, deducted therefrom the amount delivered by the defendant and multiplied this figure by the difference in cost between the price at which plaintiff could have obtained the material and $1.25 per cubic yard as set forth in the original orders.

"The trial court used this as its measure of damages, totally disregarding the course of dealings between the parties and the letter of October 4 (Plaintiff's Exhibit 'O') which as will be hereinafter pointed out under Point V resulted in a modification of the contract as to the quantity to be delivered, among other things (See also Point I above)."

But as we have held there was no modification of the contract, and find the basis of computation correct, the objection to the finding cannot be sustained.

The defendant asserts that the trial court erred in failing to make the following requested conclusion of law: "The plaintiff breached the modified agreement between the parties by the removal of his equipment and men from the gravel pit on October 17, 1944." As we have concluded that the contract in question was not modi-

fied by any subsequent agreement, the requested conclusion of law is without basis in fact. The trial court did not err in refusing the request.

It is asserted by defendant that the trial court erred in its conclusion that the plaintiff was entitled to interest on $15,501.-30 at the rate of six per cent per annum from and after November 21, 1944 until the date of judgment; that interest should have been allowed from the date of judgment only because, as it claims, the suit was on an unliquidated demand. The plaintiff's cause of action accrued on the date last mentioned, and judgment was entered six months and three days thereafter, on May 24, 1945.

The quantity of sand not delivered was a mere matter of calculation; and the court found that on and after Sept. 15, 1944, there was a market at Amarillo, Texas, at which the sand could be purchased at a price less than it had cost plaintiff to produce it. Using the Amarillo market price, with delivery adjustments, as the value factor, the court found "That the excess of the market price of sealing material ordered by plaintiff from defendant but not delivered over the contract price, considering freight, amounts to $13,678.89."

The following appears among the trial court's conclusions of law: "That the specific times for completing the furnishing of materials as indicated in the purchase orders given by plaintiff to defendant were waived by plaintiff."

The accepted orders provided that defendant should complete the delivery of 4380 cu. yds. of sand by October 12, and 4533 cu. yds. by October 26, 1944. We conclude from the letter of October 4 and the course of dealing between plaintiff and defendant that there was manifested on the part of plaintiff a willingness to accept the sand if delivered by defendant in time to be used on the resurfacing work, and defendant continued his efforts to deliver. The plaintiff began the use of sand on this work on October 7, 1944. If defendant had produced the sand that could have been transported to the places for use so that the work of resurfacing would not have been impeded, plaintiff would have been under obligation to have accepted it; for it is fair to assume from the evidence that it was the intention of the parties that any sand furnished by defendant that could be used on the job would be accepted as a partial fulfillment of the contract.

This extension of time, however, was not a waiver of damages for defendant's failure to deliver the sand it contracted to deliver; there is no evidence of such intention. "While delay may be disregarded by a manifestation of a willingness to extend the time of performance, the waiving party is not altogether precluded from insisting upon performance within a fixed

period; he can by informing the other party of his purpose fix a reasonable time within which the condition or promise must be performed. Failure to perform within that time has the same effect as if the time had been originally stated in the contract and made of the essence." III Williston on Contracts (Rev. Ed.) § 856.

There was no market in New Mexico wherein such sand was sold; but from and after September 15, 1944, there was a market in Amarillo Texas, where it could be bought at less than it could be produced in New Mexico; and this, it appears, was the nearest and best market. The price on the Amarillo market, with freight adjustments, was a competent factor for determining value, and the amount of sand undelivered was certain. From this information there was no difficulty in calculating the value of the sand at the time and place used on the date that the resurfacing was finished, which the court determined was the date that plaintiff's cause of action accrued. Under such circumstances the court did not err in allowing interest on the $13,678.87 from that date. State Trust & Sav. Bank v. Hermosa Land & Cattle Co., 30 N.M. 566, 240 P. 469; Faber v. New York, 222 N.Y. 255, 118 N.E. 609.

We do not hold that under the facts of this case the trial court would not have been justified in allowing interest as an element of damages had the amount thereof been more difficult to determine; that question is not decided, but see State Trust & Sav. Bank v. Hermosa Land & Cattle Co., supra; Littlefield v. Perry, 21 Wall. 205, 22 L.Ed. 577; De La Rama v. De La Rama, 241 U.S. 154, 36 S.Ct. 518, 60 L.Ed. 932; Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L. Ed. 265; 25 C.J.S., Damages § 53 p. 540; Restatement of Law of Contracts, § 337.

The judgment of the district court is affirmed, and it is so ordered.

SADLER, C. J., and L. BICKLEY, LUJAN, and HUDSPETH, JJ.