385 P.2d 625

### ALLSOP LUMBER COMPANY, Inc., a corporation, Plaintiff-Appellee and Cross-Appellant,

United States of America, Housing V, Inc., and Housing VI, Inc., for the Use and Benefit of Allsop Lumber Company, Inc., a corporation, Plaintiffs-Appellees,

v.

### CONTINENTAL CASUALTY COMPANY, D & L Construction Co. & Associates, a joint venture, and D & L Construction Co., a corporation, and Louis Lesser Enterprises, Ltd., and Lesser Industrial Properties, Ltd., limited partnerships, and the individual members thereof, Defendants-Appellants and Cross-Appellees.

No. 7259.

Supreme Court of New Mexico.

Oct. 7, 1963.

---

Kool & Kool, Albuquerque, Rafter & Biersmith, Kansas City, Mo., for appellants.

J. D. Weir, J. R. Crouch, Las Cruces, Frank J. Gaffney, Pittsburgh, Pa., for appellees.

MOISE, Justice.

The appellants are D & L Construction Co. & Associates, the "eligible builder," hereinafter referred to as "D & L" and Continental Casualty Company, the bonding company surety on the payment bond given to guarantee payment for labor and materials furnished in connection with construction of housing at White Sands Missile Range, pursuant to a contract entered into under authority of the Capehart Act (Au-

gust 11, 1955, c. 783, Title IV, § 403, 69 Stat. 651; August 7, 1956, c. 1029, Title V, §§ 506(b)–(d), 507, 70 Stat. 1110; 42 U.S.C.A. § 1594).

Allsop Lumber Company, Inc., hereinafter referred to as "Allsop" or "appellee," is a lumber supplier who, pursuant to written contract with D & L supplied lumber and materials for which it claims it was not paid.

Without detailing the dealings between the parties, it appears that D & L, as principals, and Continental, the bonding company, as surety, entered into two payment bonds. The bonds were furnished to meet the requirements of 42 U.S.C.A. § 1594, and were on form FHA 2452CP, with Housing V, Inc., on one and Housing VI, Inc., on the other, as "mortgagor-Builders," and The National Commercial Bank & Trust Company of Albany, as "Mortgagee," were the obligees. (It is noted that the second page on one of the bonds, as shown by the exhibit thereof, admitted in evidence, appears to be from a "performance" bond, rather than a "payment" bond. However, since the court found and the parties do not contend otherwise, we assume this to be an error in the exhibit, and that in fact the bonds were identical payment bonds, both containing the provisions of paragraph 4, quoted post.) Each of the bonds provided that it secured any one "having a direct contract with the Principal [D & L] * * * who has furnished * * * material * * * in the prosecution of the works provided for in the contract, and who has not been paid in full therefor." The bond provided for direct right of action by a claimant, subject to certain conditions of which the following are material to our case:

"2. The above named Principal and Surety hereby jointly and severally agree with the Obligees that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed or materials were furnished by such claimant or before the expiration of the period provided by the law of the place where the project is located for the giving of first notice of a lien of the category claimed by claimant, whichever period be longer, may sue on this bond for the use of such claimant in the name of either of the Obligees or their assignee hereunder, or in the name of the claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon; provided, however, that the Obligees or their assignee hereunder shall not be liable for the payment of any costs or expenses of any such suit.

\* \* \* \* \* \*

"4. No suit or action shall be commenced hereunder by any claimant:

"(a) Unless claimant shall have given written notice to any two of the following: The Principal, any one of the Obligees, or the Surety above named, before the expiration of the period referred to in condition 2 above, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the Principal, any one of the Obligees, or Surety, at any place where an office is regularly maintained by the addressee for the transaction of business, or served in any manner in which legal process may be served in the place in which the aforesaid project is located, save that such service need not be made by a public officer. For the purpose of this condition 4(a), either the giving of notice, or the filing of lien, in accordance with the pertinent lien law of the place where the project is located is a sufficient notice hereunder.

\*      \*      \*      \*      \*      \*

"(c) Other than in a State court of competent jurisdiction in and for the county or other political subdivision of the State in which the project, or any part thereof, is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated and not elsewhere."

Suit was filed in three counts: alleging in the first count a balance of $61,565.35 unpaid for materials furnished to D & L for use in performance of its contract and seeking payment under the bond; alleging in the second count that a mechanics lien had been filed and seeking its foreclosure; and in a third count seeking damages and interest because of failure to pay according to contract.

After trial to the court, judgment was entered in favor of plaintiff against D & L and Continental for $61,565.35, without interest, and providing that if the amount of the judgment was not paid within 30 days the materialman's lien sued on should be foreclosed and "all right, title and leasehold interest of Housing V, Inc., and Housing VI, Inc., in all land and improvements described in the lien be foreclosed and sold to satisfy the judgment, plus $2.75 recording fee and $255.00 attorney fee for preparing and filing the lien. The 30-day period was extended in the event an appeal was taken and supersedeas bond filed, which was done. The plaintiffs, in turn, filed a cross-appeal complaining of the court's failure to grant interest as prayed in their third cause of action.

D & L and Continental here argue eight points which they rely on for reversal.

■ They first assert that jurisdiction is exclusively in the federal courts under the provisions of the Miller Act (August 24, 1935, c. 642, § 1, 49 Stat. 793, 40 U.S.C.A. § 270a) which clearly provides that every suit thereunder "shall be brought * * * in the United States District Court * * * and not elsewhere," and quote from Lasley v. United States (5 C.A., 1960) 285 F.2d 98, in support of their position. We are satisfied that the correct rule is as stated in United States for Use and Benefit of Miles Lumber Co. v. Harrison and Grimshaw Construction Company (10 C.A.1962) 305 F.2d 363, and Continental Casualty Company v. United States (8 C.A. 1962) 305 F.2d 794. Both of these cases clearly hold that a Capehart bond and suits thereon are not actions on a Miller Act bond, and that the jurisdictional provision noted above is not applicable. Also, as pointed out in United States v. Harrison and Grimshaw Construction Company, supra, we do not perceive any real conflict between what was there held and the result in Lasley v. United States, supra. We are satisfied that the conclusion announced in the two cases from the 10th and 8th federal courts of appeal support concurrent state and federal jurisdiction and accordingly hold appellants' first point to be without merit. We recognize that New Jersey, in Gypsum Contractors, Inc. v. American Surety Co., 37 N.J. 315, 181 A.2d 174, decided otherwise, based upon Lasley v. United States, supra, and Autry & Goad Const. Co. v. Williams and Dunlap (D.C.La.1960) 185 F.Supp. 802. These decisions antedate the two cases from the 8th and 10th courts of appeal and are neither controlling nor persuasive.

We are aware that the two circuit court opinions referred to did not directly hold that the state courts had concurrent jurisdiction in actions such as the instant one. However, no other possible result could be reached on this question in the light of the conclusion arrived at by these courts that compliance with the provisions of the Miller Act as to notice were not applicable to Capehart Act bonds. The following language in United States v. Harrison and Grimshaw Construction Co., supra, is clear and unambiguous:

"* * * We are convinced that in any event Congress did not intend that the Capehart Act performance and payment bonds, and suits thereon, should be governed by the Miller Act.

"The Capehart Act as passed in 1955 contained no provision for a bond. This was added by a 1956 amendment which reads:

"'Any such contract shall provide for the furnishing by the contractor of a performance bond and a payment bond with a surety or sureties

satisfactory to the Secretary of Defense, or his designee, and the furnishing of such bonds shall be deemed a sufficient compliance with the provisions of section 1 of the Act of August 24, 1935 (49 Stat. 793) [Miller Act], and no additional bonds shall be required under such section.'

"By this amendment Congress recognized the peculiar characteristics of a Capehart Act military housing project. Congress provided for performance and payment bonds with sureties satisfactory to the government and said that the furnishing of such bonds was a sufficient compliance with the Miller Act. It did not say that the provisions of the Miller Act apply to such bonds. * * *"

Equally clear and unambiguous is the following, quoted from Continental Casualty Company v. United States, supra:

"* * * While we think that Congress intended that Capehart suppliers should have substantive bond protection essentially similar to that afforded Miller Act suppliers, we think also that Congress intended that the procedural provisions of Capehart bonds should be worked out and prescribed by the two agencies involved in the light of the unique nature of Capehart construction and of the peculiar problems which might be encountered in connection with such construction. In our

estimation had Congress intended for the procedural provisions of the Miller Act to apply to Capehart contractors and their sureties it simply would have said so."

Incidentally, in that case Continental, appellant here, was likewise the appellant, and successfully advanced the argument and position that compliance with the notice of the Miller Act was not sufficient to meet the requirements of the bond given pursuant to provisions of the Capehart Act.

Appellants also cite United States v. Travelers Indemnity Co., (W.D.Mo.S.D. 1963) 215 F.Supp. 455, and G. L. Christian and Associates v. United States (U.S.C.C. 1963) 312 F.2d 418. We see nothing in either of these decisions which in any way detracts from the decisions of the 8th and 10th courts of appeal cited and quoted from above. Also see Northwest Lumber Sales, Inc. v. S. S. Silberblatt, Inc. (E.D.Mo.E.D. 1962) 211 F.Supp. 749.

Appellants' second point raises an issue of the power or jurisdiction of the state court to enforce a lien against public property (White Sands Missile Range). Point three presents a question of whether the action is one against the United States and its instrumentalities, and that the United States is a necessary and indispensable party and cannot be sued without its consent.

Appellee asserts, without contradiction by appellants, that since the money judgment

has been superseded, the same will be satisfied without resort to the properties and Points II and III are meaningless and moot. Although the supersedeas bond is not shown in the transcript, and accordingly cannot be noticed by us, Davis v. Severson, 71 N.M. 480, 379 P.2d 774, we accept the statement as in effect an abandonment of any rights to seek satisfaction of the judgment through sale of the property, and it becomes unnecessary for us to consider the merits of these points. We accordingly do not do so.

In their Point IV, appellants assert failure of appellee to conform to the requirements of the New Mexico mechanics' and materialmen's lien statute (§§ 61–2–1 to 61–2–15, N.M.S.A.1953) asserting that the claim was defective as to form, time of filing and amount. This point could be held moot for the reasons stated in connection with Points II and III above, except for Point V which raises the question of the sufficiency of the notice required as a condition precedent to suit on the performance bond.

Section 4(a) of the bond has been quoted above. It provides clearly for written notice "to any two of the following: The Principal, any one of the Obligees, or the Surety * * *" and then provides that "* * * either the giving of notice, or the filing of lien, in accordance with the pertinent lien law of the place where the project is located is sufficient notice hereunder."

It would seem to be appellants' position that two notices are required in any event, and that the filing of a claim of lien as was done in the instant case is not sufficient. We cannot so read what seems to us to be the unambiguous statement that either the notices or the filing of a lien is "sufficient notice."

Neither Continental Casualty Company v. U. S., supra, nor U. S. v. Harrison and Grimshaw Construction Company, supra, supports appellants' position. Both of these cases held that compliance with the notice requirements of the Miller Act was not a sufficient notice to satisfy the Capehart Act bonds in suit. In neither case had a lien been filed, and no claim was made such as is here advanced. In the instant case no notices were given and reliance is placed upon the filing of the lien as compliance with the bond. No case involving similar facts has been cited, but as stated above the language is clear and subject to only one interpretation. We unhesitatingly hold that where a lien is filed "in accordance with the pertinent lien law" of New Mexico no additional notice is required.

Having so determined, we must examine the lien as filed in the light of the defects therein asserted by appellants under Point IV in an effort to decide if the lien was filed "in accordance with the pertinent lien law" of New Mexico.

■ Appellants first assert that the lien as filed was defective and not in accord with our law in that § 61–2–6, N.M.S.A. 1953, requires that the claim filed with the county clerk must, among other things, contain "a statement of the terms, time given and conditions" of the contract, and further, under § 61–2–7, N.M.S.A.1953, if two or more buildings are involved in one claim the amount due on each building must be designated.

The argument as to § 61–2–7, N.M.S.A. 1953, is easy to answer since the section clearly states that if the amount claimed to be due on each of two or more buildings is not designated, the lien is postponed to other liens. It is clear that such omission, and it is not certain in this case that there is an omission, does not affect the validity of the lien, but simply affects its priority. Post v. Fleming, 10 N.M. 476, 62 P. 1087.

■ We next note the assertion that the claim is defective for failure to contain "a statement of the terms, time given and conditions." The claim of lien as filed plainly states, " * * * that said materials were furnished to and at the request of said contractor D & L Construction Co. and Associates, 13238 Sherman Way, North Hollywood, California, upon the terms and agreement that payment therefor would be made by the tenth of the month following deliveries * * *." That this is sufficient compliance with the statutory requirement in this regard would seem to be clear. Particularly is this true in the light of our rule that our law should be liberally construed and substantial compliance is all that is required to enjoy its benefits. Home Plumbing and Contracting Company v. Pruitt, 70 N.M. 182, 372 P.2d 378; Hot Springs Plumbing & Heating Co. v. Wallace, 38 N.M. 3, 27 P.2d 984.

■ Section 61–2–6, N.M.S.A.1953, provides that "every person, save the original contractor, claiming the benefit of this article, must within ninety [90] days after the completion of any building, improvement or structure * * *" file his claim.

Appellants assert that, whereas the claim was filed on December 21, 1960, nothing is stated as to when any of the improvements were completed, except that it is alleged that "both projects were completed on or about October 31, 1960," and the court found that one project was accepted by the government as complete on December 22, 1960, and the other on April 4, 1961.

If we understand the point correctly, it advances a theory that the lien was not timely filed because it was prior to completion of the projects. With this position we are unable to agree. As we read the requirement that the filing be within 90 days "after completion," a claim of lien filed before completion would amount to substantial compliance. We do not read the language as limiting the time both before and

after completion, but merely fixing a date after performance of the claimant's contract after which filing will not be timely. To hold otherwise would put upon a creditor a most onerous responsibility of determining the date of completion which might be difficult to ascertain with any degree of certainty. It might also delay for prolonged periods the time at which a lien could be filed, and then require that it be done precisely within the 90-day limitation period. No such meaning was intended, and it would serve no beneficial purpose to make such a requirement. Compare Merchants and Traders' National Bank v. Mayor, Aldermen and Common Council of the City of New York, 97 N.Y. 355; Bellion v. Durand, 39 Utah 532, 117 P. 798; Hahn v. Citizens' State Bank, 25 Wyo. 467, 171 P. 889, 172 P. 705.

■ Next, appellants complain concerning the amount claimed and state that the "basic defect" in the claim is demonstrated by the fact that the court erroneously enforced the contract for the amount claimed without proof that any part of the materials were actually incorporated into the structures. That we adhere to the California rule requiring proof not only of sale of materials for a particular project, but actual use therein would seem to be clear. Tabet v. Davenport, 57 N.M. 540, 260 P.2d 722. However, absent allegations and proof of fraud, that there may be a dis-crepancy between the amount claimed and the amount proved does not raise any issue as to the validity of the lien. Hobbs v. Morrison Supply Co., 41 N.M. 644, 73 P.2d 325. Here, we have no suggestion of fraud—only a complaint that the amount asserted was not established by proof as having been actually incorporated in the structure. This argument will be discussed later in this opinion in connection with another point. However, we do not perceive how any honest discrepancy in the amount could be considered as denying the claim, as filed, effect as giving the notice required in paragraph 4(a) of the bond, quoted above. It certainly is a lien filed "in accordance with the pertinent lien law" of New Mexico and accordingly a "sufficient notice" under the bond.

Nothing to the contrary is determined in any of the cases cited by appellants. In both United States v. Harrison and Grimshaw Construction Company, supra, and Continental Casualty Company v. United States, supra, the holdings were to the effect that the double notice requirement in the Capehart bonds there being considered was not met by giving a notice sufficient under the Miller Act. As we read the plain language of the bond in the instant case, filing of a lien "in accordance with the pertinent lien law" of New Mexico was a "sufficient notice." We fail to perceive how clearer language could have been contrived. The other cases cited by appellants

are all Miller Act cases, and this being a Capehart Act bond, not controlled by the Miller Act, are not applicable.

Nothing remains in connection with the appeal herein except to determine if the court's findings as to the amount due appellee is sustained by substantial evidence. Involved is not only the question of substantial evidence to support the amount claimed by appellee, but also whether or not denial of damages for non-compliance with contractual provisions has support in the evidence.

Appellants do not claim that the materials as billed were not delivered to the contractor. They say that the action is not one on contract for a balance due, but is a suit on two bonds given in connection with two work projects. They complain that there is no evidence of the value of the lumber incorporated in connection with the separate projects and chargeable under each particular bond.

The argument would place upon the supplier of materials in connection with what was essentially one project, the burden of proving which separate project received the particular items and which surety bond should be responsible therefor and, in addition, the further burden of establishing actual incorporation of the materials into the buildings.

On the question of necessity to establish incorporation of the materials in the structure as opposed to proof of delivery for use in the project, we do not consider that proof sufficient to establish a lien is necessarily required. Our inquiry must be directed to the bond and the undertaking thereunder. The bond guarantees the prompt payment for all materials "furnished in the prosecution of the work provided for in the contract." We see a significant difference between the bond language quoted and the language of § 61–2-2, N.M.S.A.1953. We have no difficulty in concluding that substantial proof is present that the materials were "furnished in the prosecution of the work" so as to create liability under the bonds even though no proof was attemped to establish actual incorporation in any particular building. In this connection we would point out that although the procedure of the Miller Act does not apply here, the condition of the bond is in identical language to that contained in the Miller Act (Title 40, § 270b, U.S.C.A.) where right to sue is accorded those who have "furnished labor or material in the prosecution of the work provided for in such [the] contract." The distinction which we make was only recently made by this court in another case involving a claim of lien for rental of equipment under our state lien law, Lembke Construction Co. v. J. D. Coggins Co., 72 N.M. 259, 382 P.2d 983. What was there said is applicable under the point being discussed here.

We now consider the effect of appellee's failure to prove the amount of materials which were delivered for use on each particular project or building. We set forth the following findings of fact made· by the trial court which clearly explain the dealings between the parties:

"3. That the Defendants D & L Construction Co. & Associates, et al., jointly and severally, pursuant to 42 USCA, Section 1594 et seq., entered into a certain housing contract identi- · fied as No. DA 29–005–Eng. 2368 with the United States of America, acting through the Department of the Army as designee of the Secretary of Defense, and with the use Plaintiffs Housing V, Inc., and Housing VI, Inc., as mortgagor-builder for the construction of 251 Capehart Housing Units for military personnel at White Sands Missile Range, Dona Ana County, New Mexico.

"4. That although the housing contract contemplated and covered one general work or project, for financing convenience only, the same was divided into two work projects and mortgage areas and the Defendants Housing V, Inc., and Housing VI, Inc., as contracting parties became separate mortgagors and builders for financing and construction purposes, the projects being designated as Parcel 2, FHA Project 116–81016—Army No. 8, and

Parcel 1, FHA Project 116–81017— Army No. 9, respectively.

"5. That incident to and contemporaneously with the housing contract, the United States, acting by and through the Department of Army, as lessor, entered into two separate leases with Defendants Housing V, Inc., and Housing VI, Inc., as lessees, both filed June 24, 1959, and recorded in Book 40, page 283, and Book 40, page 293, respectively, of the Miscellaneous Records of Dona Ana County, New Mexico, covering lands on which the Capehart housing units were to be constructed pursuant to the housing contract; that lessees simultaneously executed mortgage liens for construction finance on their respective leasehold interests to the National Commercial Bank and Trust Company of Albany, New York, filed June 24, 1959, and recorded in Book 130, page 70, and Book 130, page 75, respectively,· of the Mortgage Deed Records of Dona Ana County, New Mexico.

"6. That pursuant to the housing contract and in compliance with the provisions of 40 USCA, Sec. 270–a et seq. and 42 USCA Sec. 1594 et seq., two separate Federal Housing Administration dual obligee payment bonds dated June 23, 1959, identified as Bonds Nos. 15 2 3248 and 15 2 3249 in the·amounts

of $2,291,700.00 and $1,733,800.00, respectively, were executed by the Defendants D & L Construction Co., & Associates, as joint ventures, as principal, and the Continental Casualty Company, Defendant, as surety, in which Housing V, Inc., and Housing VI, Inc., as 'mortgagor-builder' were obligees; that said defendants as principal and surety, bound themselves jointly and severally in the amounts of said bonds and each of them, conditioned that if the principal should promptly make payment to all claimants for all labor and materials furnished and the prosecution of the work provided in said housing contract, then the obligation should be null and void; otherwise, it would remain in full force and effect. Each of these bonds were duly accepted by the United States of America and have been in full force and effect since June 23, 1959.

"7. That on October 21, 1959, the plaintiff Allsop and Defendants Construction Company entered into a written contract whereby Allsop agreed to sell and furnish to the Construction Company and the latter agreed to buy and pay for specified types of plywood and lumber at specified prices for use by the Construction Company in the performance of said housing contract and between the dates of October 22, 1959, and July 29, 1960, at the special instance and request and upon order of the Construction Company, Allsop supplied and delivered to the Construction Company for use in the performance and prosecution of the housing contract and the construction of the housing units, plywood and lumber, plus freight charges, in the sum of $390,449.06, on which the Defendants Construction Company paid or was otherwise credited with the total sum of $328,883.70, leaving a balance due and owing to Plaintiff Allsop by Defendants Construction Company in the sum of $61,565.36, demand for the payment of which has been made and refused."

It is clear in the proof, and as found by the court, that one contract for the construction of 251 housing units was entered into by appellants. It further appears that for financing convenience only, the government determined that two work projects should be utilized in the performance of the contract, and this division was recognized. in the lease documents, the mortgage papers, and the bonds given by appellants. However, it is interesting to point out that the bonds each secured payment for all materials "furnished in the prosecution of the *work provided for in the Contract,"* using the singular form. Even though the bonds refer in their body to the contracts for construction of the different projects, the reference in the condition to the "contract" must be to the one overall contract,

there being no other contract in fact. It follows that the two bonds necessarily secured appellees for claims arising on either or both projects constructed pursuant to the one contract. Also, we note the subcontracting agreement between the parties wherein it is recited that D & L "has entered or is about to enter into *a contract* with the United States * * * for the construction of 251 housing units, Capehart Housing to be constructed at White Sands, N. M. * * *" and appellee, as subcontractor agreed to furnish specified materials "necessary for the performance to the completion of the prime contract between D & L Construction Co. and Associates and the military." Thus, it clearly appears that D & L had one contract with the U. S. covering all the houses, and one contract with appellee for all the materials. Two bonds, each intended to guarantee prompt payment of a part of the amount which might become due and unpaid by the contractor does not create any insurmountable obstacle when it is recognized that together they are intended to secure prompt payment of all amounts unpaid for labor and material on the one contract up to the total amount of the obligation undertaken therein. It follows that the position of appellants is without merit.

Finally, we are presented with an argument to the effect that appellee breached its contract and so is not entitled to recover thereunder, and that D & L is in turn entitled to offsetting damages suffered by it as the proximate result of appellee's breach of contract.

Appellants complain that a finding by the court to the effect that the provisions of the printed contract "for the most part were inapplicable" to the situation here present, is not sustained by substantial evidence, and call attention to the fact that objections to testimony to explain the contract were sustained by the court. Even though there may be no direct testimony on the subject, a cursory examination of the contract itself clearly demonstrates that it is a form intended for use primarily where materials are furnished, and in addition where labor was to be performed. Witness the provisions to "furnish all material including water and electricity and to perform all labor and to supply all necessary equipment, tools, machinery, ladders, scaffolding, and anything else which may be required for the complete and prompt performance in a good and workmanlike manner, according to all requirements of the 'Contract Documents,' and all the terms and conditions set forth herein, the following work: As per attached Exhibits A and B," and then we find the following language in paragraph 1 of Exhibit A attached:

"1. The attached list of lumber and material prices with respect to various grades, dimensional-size and species marked Exhibit B, shall apply in providing all lumber requirements, at con-

tractor's option, necessary for the performance to completion of the prime contract between D & L Construction Co. and Associates and the military." which together with the other paragraphs of Exhibits A and B demonstrate clearly that the only undertaking by appellees was to deliver lumber, plywood and fiberboard "F.O.B. project site or F.O.B. railhead Oro Grande, * * * in strict accordance with the contractor's schedule and instructions."

Appellants would have us deny appellee recovery because of claimed late deliveries in the face of the court's finding that D & L did not furnish appellee "with schedule of deliveries for project thirty (30) days prior to first scheduled arrival" as required by their contract, and in the face of a finding that there were deviations from the terms of the contract by both parties. It is not claimed that these findings are not supported by substantial evidence. Appellants, nevertheless, would have us hold that appellee must strictly conform to its contractual undertaking or be barred recovery either on the payment bond, or on its mechanics' lien. For reasons already explained, whether such a rule would be applicable in connection with the mechanics' lien under the facts here we need not and do not consider.

We are clear that no such rule is applicable to the suit on the contract and bond. In a situation where D & L was itself not complying with the written terms of the contract and was demanding and receiving substantial performance from appellee, there must have been a waiver, in effect, of the shortcomings in appellee's performance, now asserted to be decisive. Roswell Drainage Dist. v. Dickey (C.C.A. 8, 1923) 292 F. 29. Under certain circumstances, delays and shortcomings in performance of appellee might subject it to damages suffered as a result thereof. Barnard-Curtiss Company v. United States (U.S.C.A. 10, 1958) 257 F.2d 565. In the instant case D & L sought damages on account of alleged delays in delivery and because of failure of materials to meet specifications. The court specifically found that any delays in completion of the work was the fault of D & L and not of appellee, and further that all materials delivered met specifications. These findings are supported by substantial evidence and will not be disturbed by us on 'appeal. Staley v. New, 56 N.M. 756, 250 P.2d 893. It follows that not only was there no error in the court's conclusion that there should be no recovery on the counter claim, but that the findings and conclusions concerning appellee's right to recover and the amount of the recovery likewise should not be disturbed.

There remains for consideration, the questions raised on the cross-appeal concerning cross-appellant's rights to interest. Cross-appellant relies on our decision in

Coseboom v. Marshall Trust, 67 N.M. 405, 356 P.2d 117, in which we held that interest at 6% per annum was due in a suit on a check on which payment had been stopped. However, this is not such a case. Although it appears from the court's findings that cross-appellee had delivered two checks to cross-appellant totalling $45,000.00, to apply on the account, this is not a suit on these checks.

The suit, however, is on a contract and for material, the amount of which being a mere matter of calculation under our decision in Sundt v. Tobin Quarries, 50 N.M. 254, 175 P.2d 684, 169 A.L.R. 586 589, interest should have been allowed from the date the cause of action accrued, and not from the date of judgment. To like effect is O'Meara v. Commercial Insurance Company, 71 N.M. 145, 376 P.2d 486. The court erred in not allowing interest in accordance with the rule thus announced.

It follows from what has been said that the judgment appealed from should be affirmed except as it purported to foreclose the materialman's lien and except as it denied interest to cross-appellant prior to judgment. The cause is remanded with instructions to set aside the judgment and to enter a new one in accord herewith. Costs on appeal shall be borne by appellants.

It is so ordered.

CHAVEZ and NOBLE, JJ., concur.